**NORTHERN INDIANA PUBLIC SER-VICE COMPANY, Appellant**
**(Defendant Below),**

v.

**Bobbie J. STOKES, Appellee**
**(Plaintiff Below).**

**No. 3–685–A–149.**

Court of Appeals of Indiana,
Third District.

May 28, 1986.

Rehearing Denied July 3, 1986.

Richard A. Hanning, Eichhorn, Eichhorn & Link, Hammond, for appellant.

John M. Kopack, Merrillville, for appellee.

STATON, Presiding Judge.

On January 14, 1980, Bobbie J. Stokes (Stokes) tripped and fell over a plastic runner covering part of the floor at the Consumer Service Center owned by Northern Indiana Public Service Company (NIPSCO). A jury found in favor of Stokes and determined her damages to be forty-five thousand dollars.[1] NIPSCO appeals, and argues that the trial court erroneously denied its motion for judgment on the evidence pursuant to Indiana Rules of Procedure, Trial Rule 50. Specifically, NIPSCO contends that its motion was erroneously denied for the following reasons:

1) the danger was open and obvious obviating any duty NIPSCO may have owed to Stokes;

---

1. Counsel for appellant was remiss for failing to include a verbatim statement of the judgment in their brief as required by Indiana Rules of Procedure, A.P. 8.3(A)(4).

2) there was no evidence that NIPSCO was negligent; and

3) there was no evidence that prior to Stokes' fall, NIPSCO was or should have been aware of a defect or condition on the premises.

Affirmed.

## I.

### Open and Obvious

Stokes entered NIPSCO's Service Center to make a partial payment on her utility bill. The plastic floor runner, which was three feet, four inches wide and one-eighth of an inch thick, lay on a tiled floor separating a row of chairs on one side from the NIPSCO service representatives on the other. Stokes sat in one of the chairs and waited approximately ten minutes for her turn to talk with a NIPSCO agent. When her name was called, Stokes started over to the service desk but tripped on the runner. She fell to the floor striking her hands and knees and was injured. Stokes claimed that a pucker along the edge of the rubberized mat caused her to lose her balance.

At the close of Stokes' case, NIPSCO moved for judgment on the evidence pursuant to T.R. 50. NIPSCO claims that its motion was erroneously denied because the danger to Stokes was open and obvious,

therefore, as a matter of law, it owed Stokes no duty. This argument is based on *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, *trans. den.* (Staton, P.J., dissenting), a case recently decided by this court.

In *Law,* the open and obvious danger rule derived from *Bemis Co., Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058 (Hunter and DeBruler, J.J., dissenting), *cert. den.* (1982), 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, was applied to deny recovery to a repairman who knowingly walked onto a wet and slippery floor and was injured. The reasoning in *Law,* however, that the open and obvious danger rule should apply to slip and fall situations, has since been rejected by our state supreme court in *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, 489, *reh. den.* (Shepard, J., concurring in part and dissenting in part; DeBruler, J., dissenting). *Bridgewater* stands for the proposition that the open and obvious danger rule is limited to products liability cases, and it should not be extended to those cases involving general negligence.[2]

*Bridgewater* was published after NIP-SCO filed its appellate brief, but before NIPSCO filed its reply brief. In the latter, NIPSCO argued that *Bridgewater* should not adversely affect its contention since the

---

**2.** The reasons why the open and obvious rule should not apply to general negligence cases were contained in the dissenting opinion to *Law, supra.* A portion of that dissent is reproduced here because it addresses the instant issue—the duty of a business invitor in a slip and fall situation.

> The majority also unnecessarily dared to extend the products liability open and obvious danger test to the slip and fall situation. Negligence law in Indiana adequately covers this situation without borrowing doctrines from the law development for products liability. To be liable for negligence in Indiana, the defendant must have failed to exercise his duty of care owed to the plaintiff resulting in the plaintiff's injury. *Norman v. Turkey Run Community School Corp.* (1980), Ind., [274 Ind. 310] 411 N.E.2d 614, 616. As a business invitor, *Yukon* owed a duty to *Law,* an invitee, to exercise reasonable care to maintain the plant in a reasonably safe condition unless and until *Law* had reasonable notice that the premises were not safe. *Kroger Co. v.*

*Haun* (1978), 177 Ind.App. 403, 407, 379 N.E.2d 1004, 1007; *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 162, 341 N.E.2d 785, 787.

> If *Law* had reasonable notice that *Yukon* was not exercising due care in maintaining dry floors he might be guilty of contributory negligence or incurred risk. As the majority notes, knowledge and appreciation of peril are essential elements of these defenses. In fact, contributory negligence occurs when the plaintiff unreasonably fails to recognize an obvious risk or danger. *Kroger, supra* 379 N.E.2d at 1009. Incurred risk occurs when the plaintiff voluntarily accepts a known risk or danger. *Id.,* 379 N.E.2d at 1012. With these defenses and the invitee duty rule, there is no need to extend the open and obvious danger test which is and should remain limited to products liability cases.

*Bridgewater, supra,* 486 N.E.2d at 489 (quoting *Law, supra,* 458 N.E.2d at 681 (dissenting opinion)).

"risk, or danger, of tripping was open and obvious to everyone, including NIPSCO." Reply Brief at p.1, n.1. In essence then, NIPSCO is arguing that under any standard, the danger to Stokes was so blatant that the trial court should have found as a matter of law that NIPSCO owed no duty to Stokes.

▇▇▇ Before a jury may consider the question of negligence, the trial court must first determine whether the defendant owes the plaintiff a duty.[3] In the instant case, it was uncontroverted that Stokes was a business invitee of NIPSCO. The duty owed by a host to a business invitee has been well established. Although the business host is not an insurer of the safety of invitees, the host must exercise reasonable care to maintain its property, including the obligation to discover possibly dangerous conditions and to take reasonable precautions to protect the invitee. *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, *trans. dis.* The question before us is whether or not NIPSCO's duty was obviated, as a matter of law, because Stokes either incurred the risk[4] or was contributorily negligent.[5]

▇▇▇ When reviewing the denial of a T.R. 50 motion for judgment on the evidence, this court will consider evidence most favorable to the nonmoving party along with all reasonable inferences therefrom. If there is any probative evidence or reasonable inference to be drawn from the evidence or if reasonable people would differ as to the result, judgment on the evidence

is improper. Given that qualification, the motion should be granted only in those cases where the evidence is not conflicting and susceptible to one inference, supporting judgment for the movant. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 79 (DeBruler, J., concurring); *Farm Bureau Ins. Co. v. Crabtree* (1984), Ind.App., 467 N.E.2d 1220, 1225, *trans. den.*

▇▇▇ An examination of the evidence is not susceptible to the sole inference that the danger of falling on the mat was so blatant that Stokes should have been aware of imminent harm, or that she threw caution to the wind by crossing the runner. It is sufficient to note that NIPSCO spent considerable effort at trial trying to convince the jury that the plastic mat was not dangerous.[6] Consequently, we have determined that several conflicting inferences could reasonably be drawn from the evidence presented in this case, and that the trial court did not err by denying NIPSCO's T.R. 50 motion.

## II.

### Negligence

NIPSCO also attacks the trial court's decision to deny its T.R. 50 motion on the grounds that there was no proof that the mat was dangerous *per se*, or that there was a condition or defect which caused Stokes to trip. NIPSCO urges us to conclude that because Stokes failed to present any evidence that NIPSCO was negligent she has not made a *prima facie* case, and it was error for the trial court to let this

3. The trial court must also determine what standard of care should be imposed on that duty, and whether the evidence introduced by plaintiff at trial was sufficient to find that plaintiff has established the elements of a cause of action. *Koroniotis v. LaPorte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656.

4. *See, Colaw v. Nicholson* (1983), Ind.App., 450 N.E.2d 1023 (incurred risk involves a voluntary acceptance of specific risk of which plaintiff has actual knowledge). Defendant has burden of proving the incurred risk. *Id.*

5. *See, Lambert v. Parrish* (1984), Ind.App., 467 N.E.2d 791, 798, *reh. den.* (plaintiff in a negli-

gence case is contributorily negligent when that person fails to exercise that degree of care for his own safety that a reasonable and prudent person would exercise in the same or similar circumstances). Defendant has burden of proving contributory negligence. *Id.*

6. In its reply brief, NIPSCO argues that "... there was no evidence that a bulge or buckle was in the runner before the accident, much less that there had been one for a sufficient length of time that in the exercise of ordinary care, NIPSCO should have discovered it." Reply Brief at p.7. It seems that even NIPSCO, in an alternative argument, has drawn the inference that a dangerous condition was not apparent.

case go before the jury. Stokes claims that the negligence issue was for the jury to decide.

The gravamen of Stokes' complaint was that NIPSCO was negligent because its plastic runner was not securely fastened to the floor which allowed it to pucker along its edge. Although Stokes could not discern the exact cause of her fall when her toe came in contact with the edge of the runner, after she fell she noticed small puckers along the mat's edge. The existence of these puckers was confirmed by a security guard at the service center who came over to Stokes after she fell. The guard also testified that when he stepped on the puckers they went away. Two other NIPSCO employees also checked the area in which Stokes fell, and they found nothing unusual or anything that could cause someone else to trip. Four days later, a NIPSCO claims adjuster who examined the runners from the service center testified that although no nails or tape were used to fasten the runner to the floor, everywhere he touched along the underside of the mat, it was sticky to promote the mat's adherence to the tile floor. That evidence was uncontroverted. The only other testimony about the mat was that it was discolored and dirty.

A causal relationship between negligence and injury must be shown in order to fix liability, *School City of Gary v. Claudio* (1980), Ind.App., 413 N.E.2d 628, *trans. den.*, and generally it is the plaintiff who must prove the defendant's negligence. *Plan-Tec v. Wiggens* (1983), Ind. App., 443 N.E.2d 1212. In the instant case, the injury sustained on the premises must be the result of a defect in the premises, *Bell v. Horton* (1980), Ind.App., 411 N.E.2d 648, *reh. den.*, since negligence will not be

assumed from the mere fact that there was an injury. *F.W. Woolworth Co. v. Jones* (1955), 126 Ind.App. 118, 130 N.E.2d 672 (*en banc*) (absent special circumstances to invoke doctrine of *res ipsa loquitur,* the mere happening of an accident does not make a *prima facie* case for the plaintiff).[7]

When reviewing a T.R. 50 motion, we will consider the evidence most favorable to the nonmoving party along with all reasonable inferences therefrom. *Whisman, supra.* Thus, we must determine if there is any evidence or legitimate inference to be drawn from it to support Stokes' allegation that NIPSCO was negligent. In the present case, there is no direct evidence of negligence so our determination focuses on whether it was reasonable to infer that the puckers Stokes observed after her fall were there before she fell, and that they were the cause of her mishap.

In *Haidri v. Egolf* (1982), Ind.App., 430 N.E.2d 429, *reh. den.,* we commented on the difficulty of determining what may reasonably be inferred from evidence. In that case, in which the driver of a car, who was struck in the rear, could not produce any evidence of how or why the other driver was negligent, Judge Garrard wrote the following:

Where, however, the evidence is circumstantial the ruling on a TR 50 motion may be indeed exacting. The question then becomes the *reasonableness* of the soughtfor inference. Posed in the context of this case the issue is whether the evidence before the court when the motion was made was sufficient to create a reasonable inference of negligence on the part of the defendants, or whether the necessary inference of negligence was unreasonable in the sense that it could exist only as a matter of surmise, conjec-

---

7. This point of law was further explained in *Pardue v. Seven-Up Bottling Co. of Indiana* (1980), Ind.App., 407 N.E.2d 1154, 1159, *reh. den.,* (Ratliff, J., dissenting), as follows:

When an event takes place, the real cause of which cannot be traced, or is at least not apparent, it ordinarily belongs to that class of occurrences designated as purely accidental, and, there being no presumption of negli-

gence in such cases, the party who asserts negligence must show enough to exclude the case from the class mentioned; a jury cannot arbitrarily infer negligence, but the evidence must affirmatively establish circumstances from which the inference fairly arises that the accident resulted from the want of some precaution which the defendant ought to have taken.

ture or speculation. In the latter instance judgment on the evidence would be proper.

*Id.*, at 431 (emphasis in original) (footnote omitted).

In order to persuade us that it would be unreasonable to infer that NIPSCO was negligent in this case, NIPSCO has referred us to four cases from other jurisdictions. These cases, however, are distinguishable from the instant case, thus, they do not control our determination.

The first two cases cited by NIPSCO are ones in which, like *Haidri*, there is no direct evidence of the defendant's alleged negligence. In these cases the inference of negligence was unreasonable because it could exist only as a matter of surmise, conjecture or speculation. In *Robinson v. Southwestern Bell Telephone* (1960), 26 Ill.App.2d 139, 167 N.E.2d 793, the plaintiff tripped when the heel of her shoe somehow became caught in a rubber mat as she began to descend a staircase. Likewise, in *Galloway v. J.C. Penney Co.* (1970), Miss., 235 So.2d 275, a woman inexplicably tripped as she crossed a rubber mat. In that case, the woman and her husband observed bulges in the mat after the fall, but both of them testified that they looked directly at the mat prior to walking over it, and saw it to be lying flat. In contrast, Stokes did not pay attention to the condition of the mat until after she fell. The diversity between these two cases and the instant case is that here the inference Stokes seeks is that the bulges in the mat were responsible for her injury; whereas in *Robinson* and *Galloway*, not even the plaintiffs could satisfactorily supply the necessary inference to connect their injuries with some alleged negligent act or omission by the defendant.

Our attention is also directed to *Southern Bell Telephone and Telegraph Co. v. Walters* (1967), Ky.App.Ct., 413 S.W.2d 615 and *Earley v. Morrison Cafeteria Co. of Orlando* (1952), Fla., 61 So.2d 477. These cases are ones in which the danger was open and obvious. In *Walters,* a person tripped over a loose metal covering for a wire running across a floor. In that case, the injured party was very familiar with the covering and its condition. In the final case, *Earley,* the injured party tripped over a mat with a squared-off edge approximately $\frac{1}{4}$–$\frac{1}{2}$ inch high. Although the plaintiff claimed that the danger was hidden because the mat was behind a vestibule door, the court decided that the plaintiff was or should have been aware of the mat since she had walked over it just moments before she fell. In the present case, we have already discussed that the danger to Stokes was not open and obvious as a matter of law, and whether or not the mat was concealed is not an issue here. The relevant inquiry in the instant case focuses on the puckers, and when they came into existence.

In our view, the inference of negligence in this case is not unreasonable. The existence of the puckers in the mat after her fall is the fact in this case giving rise to the inference that the puckers were there when Stokes started to cross the mat. A jury can infer negligence from the facts proved, but it cannot infer the existence of facts which would constitute negligence. *Pardue v. Seven-Up Bottling Co. of Indiana* (1980), Ind.App., 407 N.E.2d 1154, 1159, *reh. den.* (Ratliff, J., dissenting).

As pointed out in *Haidri,* the location of the line distinguishing those inferences which are reasonable from those which are not is difficult to identify. However, a careful review of the evidence supports the trial judge's inference and supports his ruling denying the motion for judgment on the evidence.

## III.

### Awareness of Condition

Finally, NIPSCO argues that its T.R. 50 motion was erroneously overruled because there was no evidence that it was or should have been aware of a defect or condition on its premises. We have already established that it is only where the facts undisputably lend themselves to one inference or conclusion in support of the movant

that a T.R. 50 motion should be granted, *Crabtree, supra,* and in this case we are not convinced that NIPSCO sustained its T.R. 50 burden. The evidence and reasonable inferences therefrom pertaining to the puckers, the discoloration and overall condition of the mat support the trial court's decision to let the jury decide the question of liability. While it was for the trial court to determine the standard of care with respect to the duty owed, it was for the jury to determine whether the circumstances are such as would require liability under that standard. *Bearman v. University of Notre Dame* (1983), Ind.App., 453 N.E.2d 1196, *trans. den., Belcher v. Buesking* (1978), 175 Ind.App. 322, 371 N.E.2d 417.

Affirmed.

GARRARD, J., and CONOVER (by designation), JJ., concur.