Brenda JACKSON, Individually and as Executrix of the Estate of Charles Jackson and Kenneth R. Barber, Plaintiffs-Appellants,

v.

Glen E. WARRUM, Caito Food Services, Inc., and Crane Carrier Co., Inc., Defendants-Appellees.

No. 41A01-8711-CV-282.

Court of Appeals of Indiana, First District.

March 20, 1989.

Joe Keith Lewis, Fishburne & Lewis, Marion, for plaintiffs-appellants.

Steven J. Strawbridge, Locke Reynolds Boyd & Weisell, Indianapolis, for defendants-appellees Glen E. Warrum Caito Food Services, Inc.

John F. Prescott, Jr., Ice Miller Donadio & Ryan, Indianapolis, for defendant-appellee Crane Carrier Co., Inc.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Brenda Jackson, individually and as the executrix of the Estate of Charles Jackson, and Kenneth Barber appeal from the Johnson County Circuit Court a judgment against them on their claims which arose out of a motor vehicle collision. We affirm in part, reverse in part, and remand.

## FACTS

In 1978, Crane Carrier Company, Inc. (hereinafter Crane) manufactured a low-entry design cab and chassis to be used as a

garbage truck. The low-entry design placed the cab of the garbage truck forward of the front wheels and placed the garbage packer box behind the engine which was placed between and behind the driver and passenger seats of the cab. The low-entry design permitted the driver and passenger to enter the cab without the use of an outside step because the floor of the cab was located sixteen inches (16″) from ground level. The foot controls, however, were elevated and were located on the cab floor directly behind the front bumper. Thus, when the driver was operating the foot pedals, the driver's feet were approximately eleven inches (11″) from the front of the truck. In the fall of 1981, Crane manufactured the cab and chassis involved in the present case. The cab and chassis were equipped later with a garbage packer. In early to mid June of 1982, the City of Marion obtained the unit as a demonstrator on loan from Central Indiana Truck Equipment, Inc. (hereinafter CITE) and Marion Truck Sales (hereinafter MTS), distributors for Heil, Co. and Crane respectively.

Charles Jackson, an employee for the City of Marion's Department of Sanitation, was ordered to drive the garbage truck on penalty of losing his job. Although Jackson complained about the driver's position in the truck and the truck's airhorn, ride, maneuverability and braking quality, he followed his employer's orders. On July 1, 1982, Jackson and Kenneth Barber were en route to the landfill to empty the fully loaded garbage truck. The garbage truck and load weighed 47,140 pounds. Jackson and Barber were proceeding west on State Road 18 east of Interstate 69. At the same time, Glen Warrum, an employee of Caito Food Services, Inc., (hereinafter Caito) was operating a semi-tractor and trailer in the left turn lane of east bound State Road 18. Warrum had his left turn signal on and was attempting to turn onto the entrance ramp for southbound Interstate 69. Warrum observed the garbage truck driven by Jackson on the westbound side of State Road 18. Warrum noticed that the garbage truck's right turn signal was on, that the garbage truck moved from the left to right hand lane, and that the truck appeared to be preparing to turn as it neared the entrance ramp. Based on these observations, Warrum assumed that Jackson was going to turn at the entrance ramp, and since the garbage truck's access to the entrance ramp was located east of the access for eastbound State Road 18 traffic, Warrum decided it would be safe for him to make his left turn onto the entrance ramp. Warrum's assumption that Jackson was going to turn right was mistaken. Jackson had no intention of turning onto the entrance ramp. Rather, Jackson intended to proceed farther west on State Road 18 to the landfill. The garbage truck was equipped with manual cancelling turn signals. Although Jackson did not remember turning on his signal, he apparently forgot to turn his signal off after a previous turn or lane change.

When Warrum began his turn in front of Jackson, Jackson immediately attempted to sound the air horn, pumped the brake pedal, swerved to the right, and attempted but was unable to avoid a collision. At the time of impact the garbage truck was traveling at a speed of approximately 45 m.p.h. The maximum speed for the truck was 52–54 m.p.h. under ideal unloaded conditions. The left front of the garbage truck hit the right front or passenger side of the semi-tractor. The garbage truck then veered to the right and stopped approximately 49 yards west of the point of impact next to the back side of a guardrail. Jackson was not wearing his seat belt, and on impact was thrown forward and then fell to the floor of the cab. At the same time the left front corner of the cab collapsed. The front floor board area buckled and moved into the seat mount. This created a pincer action which crushed Jackson's legs and ankles. Although Barber was wearing his seat belt, he also was forced forward, to the left, and eventually was thrown out of the cab.

On July 23, 1982, Jackson and Barber filed a complaint for damages in the Marion County Superior Court. The original complaint stated a count in negligence against Warrum and Caito, and a products liability count was addressed against

Crane, CITE, MTS, and unknown defendants for the manufacturing and distributing of a defectively designed truck and air horn. The complaint also stated counts for breach of warranty and misrepresentation. After these defendants filed answers the case was transferred to the Johnson County Circuit Court. Subsequently, Brenda Jackson was added as a plaintiff. On June 27, 1984, the Heil Co., Grover Products Co., and Wagner–Division of McGraw Edison Company were substituted for unknown defendants. The plaintiffs later dropped their claims for breach of warranty and misrepresentation. Warrum brought in the City of Marion as a third party defendant. Also, Warrum's wife, Dana, was added as a third party plaintiff to Warrum's cross-claim against Jackson. Prior to trial the plaintiffs dismissed their claims against several defendants. Several cross-claims also were dismissed.

On May 8, 1987, plaintiffs moved for a partial summary judgment against Caito and Warrum on the issue of Jackson's contributory negligence for failing to cancel the truck's turn signal when he did not intend to turn. Neither a brief nor affidavits were filed in support of this motion. The trial court denied plaintiffs' motion. On May 11, 1987, the trial commenced. At the close of the evidence more claims were dismissed, including the plaintiffs' claim against Crane which alleged that the defect in the garbage truck proximately caused the collision with the semi-tractor. On June 1, 1987, Crane filed and the trial court granted a motion for judgment on the evidence against plaintiffs' products liability claim which sought damages for enhanced injuries. Thereafter, final arguments were made and the jury was instructed on the remaining claims by and against the plaintiffs, Warrum, Caito, and the City of Marion. On July 2, 1987, the jury returned a verdict against all claimants, and the trial court entered judgment thereon. Plaintiffs appeal the denial of their motion for partial summary judgment, the trial court's grant of Crane's motion for judgment on the evidence, and the judgment entered against

them on their negligence claim against Warrum and Caito.[1]

## ISSUES

Plaintiffs raise three (3) issues on appeal which we renumber and rephrase, as follows:

1. Whether the trial court properly denied plaintiffs' motion for partial summary judgment on the issue of contributory negligence?

2. Whether the trial court erred by rejecting plaintiffs' tendered instruction No. 2 with regard to Warrum's statutory duty to yield?

3. Whether the trial court properly granted Crane's motion for judgment on the evidence with regard to plaintiffs' products liability enhancement of injury claim?

## DISCUSSION AND DECISION

*Issue One*

Jackson argues that the trial court improperly denied plaintiffs' motion for summary judgment on the issue of contributory negligence. On appeal we use the same standard as the trial court in determining the propriety of the grant or denial of summary judgment. *Jones v. Marengo State Bank* (1988), Ind.App., 526 N.E.2d 709, 714. Summary judgment is appropriate only when no genuine issue of material fact exists and the proponent is entitled to summary judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in favor of the non-movant. *Jones*, 526 N.E.2d at 714. Summary judgment should not be used as an abbreviated trial and rarely is appropriate in negligence actions. *Rediehs Express, Inc. v. Maple* (1986), Ind.App., 491 N.E.2d 1006, 1008, *cert. denied* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762; *Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764, 768. The issues of negligence, contrib-

---

1. We note that after this appeal was perfected Charles Jackson died of cancer and Brenda Jackson was substituted as the executrix for the Estate of Charles Jackson.

utory negligence, causation, and reasonable care are most appropriately left for determination by the trier of fact. *Ember,* 490 N.E.2d at 768; *McCall v. Sisson* (1975), 166 Ind.App. 403, 406, 336 N.E.2d 660, 662.

 In the present case plaintiffs argue that as a matter of law Jackson was not contributorily negligent in proceeding straight after signaling a turn. Plaintiffs rely on the Ohio cases of *Bowe v. Jenkins* (1982), 7 Ohio App.3d 302, 455 N.E.2d 707, and *Timmins v. Russomano* (1968), 14 Ohio St.2d 124, 236 N.E.2d 665, which stand for the proposition that a motorist who has a statutory duty to yield may not rely on the turn signal of an approaching vehicle. We disagree with plaintiffs and reject the Ohio cases. A motorist may be found negligent for proceeding straight after signaling a turn. *Jones v. Concrete Ready–Mix, Inc.* (5th Cir.1972), 464 F.2d 1323, 1325; *Summers v. Weyer* (1967), 141 Ind.App. 176, 179, 226 N.E.2d 904, 906; *Dotson v. Cantrell* (1970), Ky., 458 S.W.2d 10, 12; *Wardell v. Jerman* (1967), 18 Utah 2d 359, 362, 423 P.2d 485, 486. The plaintiffs appear to argue, however, that Jackson had no statutory duty to cancel his turn signal, and therefore, the fact that he did not cancel the turn signal should not have been presented to the jury. The plaintiffs' argument fails. The issue of the motorist's contributory negligence depends on *all* the facts and circumstances of the case including but not limited to the motorist's use of a turn signal, the slowing of speed, the motorist's lane of travel, and all other facts that bear on the motorist's apparent intention to turn. *Jones,* 464 F.2d at 1325; *Wardell,* 18 Utah 2d at 359, 362, 423 P.2d at 486. The facts of the present case as viewed most favorably to the nonmovant indicate that Jackson's right turn signal was on, that the garbage truck was in the right lane and was approaching the entrance ramp for southbound I–69, and that Warrum thought Jackson was going to turn. The foregoing facts do not indicate that as a matter of law Jackson was not contributorily negligent in proceeding straight after activating the turn signal. Therefore, summary judgment was inappropriate and the trial court properly sub-mitted the issue of Jackson's contributory negligence and the fact of the improperly activated turn signal to the jury.

*Issue Two*

 Plaintiffs argue next that the trial court erred in rejecting plaintiffs' tendered instruction No. 2. On appeal this court uses a three-part test to determine whether the trial court properly rejected a tendered instruction. *Parke County v. Ropak* (1988), Ind.App., 526 N.E.2d 732, 741 *trans. denied; Captain and Co., Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 97; *Van Orden v. State* (1984), Ind.App., 469 N.E.2d 1153, 1161. We must determine (1) whether the instruction correctly stated the law, (2) whether the evidence supported the giving of the instruction, and (3) whether the substance of the instruction was covered by other instructions given to the jury. *Ropak,* 526 N.E.2d at 741. Finally, we must determine whether the substantial rights of the party tendering the instruction would be prejudiced by the failure to give the instruction. *Id.*

The instruction rejected by the trial court in the present case read as follows:

"At the time of the collision under consideration in this case, there was in force a statute of the State of Indiana which provided:

"The driver of a vehicle within an intersection intending to turn left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close to thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield right-of-way to the vehicle making the left turn.

"If you find from a preponderance of the evidence that the Defendant Glen Warrum violated the statute on the occasion in question, such conduct would constitute negligence on the part of the Defendant Glen Warrum.

"This statute places a mandatory duty upon one who is turning left to yield the right-of-way to a vehicle approaching from the opposite direction. There is no exception provided for one who observes a right turn signal from an approaching vehicle."

Record at 1265. This instruction improperly stated the law. A violation of the statute referred to in the instruction does not constitute negligence if an excuse or justification exists. *See e.g., Lee v. Dickerson* (1961), 131 Ind.App. 422, 431, 171 N.E.2d 698, 702–03. Furthermore, an exception may exist for one who observes a turn signal if the facts and circumstances indicate that a left turn could be made safely. We note also that the valid substance of this rejected instruction was covered adequately by the trial court's final instruction No. 9. Therefore, we find no error in the rejection of plaintiffs' tendered instruction No. 2.

*Issue Three*

■ Plaintiffs argue last that the trial court improperly granted Crane's motion for judgment on the evidence. In reviewing the propriety of the grant or denial of a motion for judgment on the evidence we apply the same standard as the trial court. *State v. Omega Painting, Inc.* (1984), Ind. App., 463 N.E.2d 287, 293, *reh. denied* (1984), Ind.App., 464 N.E.2d 940. Judgment on the evidence may be granted only where all or some of the issues in a case are not supported by sufficient evidence. Indiana Rules of Procedure, Trial Rule 50(A). The evidence is insufficient if no evidence exists in support of an essential element of the case or if the evidence is without conflict and is susceptible of only one inference, an inference which favors judgment for the moving party. *NIPSCO v. Stokes* (1986), 493 N.E.2d 175, 179; *Bymaster v. Bankers Nat'l Life Ins. Co.* (1985), Ind.App., 480 N.E.2d 273, 276. However, in determining whether sufficient evidence exists in support of the elements of the case, the court must consider only the facts and reasonable inferences to be drawn therefrom that favor the nonmovant. *Stokes*, 493 N.E.2d at 179. If there is any probative evidence or reasonable inference to be drawn therefrom, or if reasonable minds could differ as to the judgment that should be reached, judgment on the evidence is inappropriate. *Id.*

■ In the present case, the trial court granted Crane's motion for judgment on the evidence with regard to plaintiffs' product liability enhancement of injury claim. This product liability claim is variously referred to as an "enhancement of injury", "second collision", or "crashworthiness" claim. While this product liability claim carries many names it is defined as a cause of action that seeks damages for injuries that are sustained in a collision due to a product defect which itself was not attributable to the initial accident. Mondini, *The Doctrine of "Crashworthiness" in Texas: Movement Toward a Workable Solution*, 15 St. Mary's Law Journal 889, 890 (1984). To determine if the trial court properly removed this claim from the case and the jury's consideration, we first must determine whether Indiana law recognizes a product liability enhanced injury cause of action.

Crane argues that Indiana law precludes the recognition of a product liability enhancement of injury claim under these facts, and relies on *Wixom v. Gledhill Road Machinery Co.* (1987), Ind.App., 514 N.E.2d 306. In *Wixom*, a car driven by Bobby D. Waltz collided with the rear end of a car driven by Charles Wixom. This collision forced Wixom's car across the centerline and into a State Highway truck which was equipped with a snowplow blade manufactured by Gledhill Road Machinery Company. Gledhill sought summary judgment and the trial court granted Gledhill's motion. The Court of Appeals affirmed the grant of summary judgment based on the issues preserved on appeal. The court held that Waltz's collision with Wixom was not foreseeable and was an intervening cause that precluded the imposition of liability for the accident on Gledhill. *Wixom*, 514 N.E.2d at 309. Crane argues *Wixom* stands for the proposition that the negligence of a driver in causing a collision is not foreseeable as a matter of law and

constitutes an efficient intervening cause that precludes the imposition of liability on the manufacturer. Thus, Crane argues a manufacturer of a defective product cannot be held liable when a product defect causes enhanced injuries but does not proximately cause the accident in which the injuries are incurred. Crane is mistaken. *Wixom* is limited to those cases where the plaintiff seeks to impose liability on the manufacturer as the cause of the *accident* and does not apply to cases where the plaintiff seeks to impose liability on the manufacturer as the cause of *enhanced injuries.* Footnote No. 1 in the *Wixom* opinion provided, as follows:

> "Wixom also attempted to raise an additional issue, namely, there are disputed issues of fact as to whether Gledhill's alleged negligence proximately enhanced the Wixoms's injuries which otherwise would have been relatively minor. Because this issue was not raised in the motion to correct errors, it is waived."

*Id.* at 307 (citations omitted). Thus, contrary to Crane's argument, Wixom did not address or involve a claim for enhanced injuries. Therefore, existing Indiana law does not preclude the recognition and adoption of an enhanced injury claim.

The first Indiana decision to come close to recognizing and adopting an enhanced injury cause of action was *Miller v. Todd* (1988), Ind.App., 518 N.E.2d 1124, in which Judge Buchanan opined, as follows:

> "The crashworthiness doctrine recognizes that the intended use of a vehicle encompasses the inevitability of collisions and requires the manufacturer to design a vehicle reasonably safe for those foreseeable risks. *Huff v. White Motor Corp.* (7th Cir.1977), 565 F.2d 104. While *Huff* reasoned that Indiana law would likely adopt the crashworthiness doctrine, following the trend of the majority of jurisdictions, there is no Indiana caselaw or statutory authority recognizing the doctrine. However, our resolution of this appeal does not depend upon whether Indiana adheres to the crashworthiness doctrine. The crashworthiness doctrine is merely a variation of the strict liability theory, extending a manu-

facturer's liability to situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury. *Barris v. Bob's Drag Chutes and Safety Equip., Inc.* (3d Cir.1982), 685 F.2d 94."

*Id.* at 1125–26. Thus, at this point our courts had not yet addressed the viability of an enhanced injury product liability claim.

In *Masterman v. Veldman's Equipment, Inc.* (1988), Ind.App., 530 N.E.2d 312, (rehearing pending), the Third District of the Indiana Court of Appeals did address the foregoing issue and held that Indiana recognized an enhanced injury product liability cause of action. In *Masterman,* bystanders sued for injuries that arose out of a collision with a pickup truck. The Mastermans argued that a snowplow mount was defectively designed and affixed to the pickup truck in a manner that made the truck an unreasonably dangerous instrumentality. Although the Mastermans conceded the mount did not contribute to causing the collision, the Third District, after examining the common and statutory product liability law in Indiana held that the plaintiffs' complaint stated a valid cause of action. Judge Garrard opined:

> "Considering both the common law and the plain language of the statute, the statement of liability simply 'for harm caused' imposes no requirement like that of negligence law that the defective/dangerous condition of the product must be a cause of some occurrence, or collision, without which no injuries would have occurred. We, therefore, conclude the Mastermans may state a claim under IC 33–1–1.5–3 for their injuries specifically and additionally caused by the product even though that product did not contribute to causing the collision to occur. *Accord Miller v. Todd, supra.*"

*Id.* at 315.

Many other jurisdictions also have addressed the validity of an enhanced injury cause of action. Prior to 1968 some jurisdictions rejected this type of product liability claim and followed a restrictive rule that limited product liability claims to those

cases in which the product defect itself caused an accident. *See e.g., Evans v. General Motors Corp.* (7th Cir.1966), 359 F.2d 822, *cert. denied* 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 *overruled in Huff v. White Motor Corp.* (7th Cir.1977), 565 F.2d 104 (applying Indiana law); *Shumard v. General Motors Corp.* (D.C.Ohio 1967), 270 F.Supp. 311 (applying Ohio law); *Walton v. Chrysler Motor Corp.* (1969), Miss., 229 So.2d 568, *overruled in Toliver v. General Motors Corp.* (1985), Miss., 482 So.2d 213; *Ford v. Rupple* (1972), 161 Mont. 56, 504 P.2d 686, *distinguished in Brandenburger v. Toyota Motor Sales* (1973), 162 Mont. 506, 513 P.2d 268. In *Evans,* the 7th Circuit Court of Appeals had to determine whether Indiana would permit an enhanced injury cause of action. The court decided this issue in the negative and held that the manufacturer owed no duty to design an accident-proof vehicle. The court held also that the intended purpose of an automobile did not include the participation in collisions. *Evans,* 359 F.2d at 825.

In 1968, the 8th Circuit Court of Appeals adopted a more expansive view which allowed a plaintiff to bring an enhanced injury product liability claim. *Larsen v. General Motors Corp.* (8th Cir.1968), 391 F.2d 495. The court in *Larsen,* held:

"We think the 'intended use' construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called 'second collision' of the passenger with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art.

"We do agree that under the present state of the art an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water, but such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable.

"The intended use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability, and potential of injury-producing impacts. The realities of the intended and actual use are well known to the manufacturer and to the public and these realities should be squarely faced by the manufacturer and the courts. We perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. The manufacturers are not insurers but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel. *Ford Motor Company v. Zahn* [(8th Cir.1959), 265 F.2d 729]. Our streets and highways are increasingly hazardous for the intended normal use

of travel and transportation. While advances in highway engineering and nonaccess, dual highways have considerably increased the safety factor on a miles traveled ratio to accidents, the constant increasing number of vehicles gives impetus to the need of designing and constructing a vehicle that is reasonably safe for the purpose of such travel. At least, the unreasonable risk should be eliminated and reasonable steps in design taken to minimize the injury-producing effect of impacts."

*Id.* at 502–03. Since the writing of the *Larsen* opinion an overwhelming majority of jurisdictions have permitted enhanced injury product liability claims. *See, Huff v. White Motor Corp.* (7th Cir.1977), 565 F.2d 104, 110, appendix A. *See also,* 63 Am.Jur. 2d *Products Liability* §§ 268–72 (1984), and *Annot.,* 42 A.L.R.3d 560 (1972).

In *Huff,* the 7th Circuit Court of Appeals re-examined the issue of whether Indiana would recognize an enhanced injury cause of action under our products liability law. After examining the development of products liability law in Indiana and the development of an enhanced injury cause of action in other jurisdictions, the court held:

"One who is injured as a result of a mechanical defect in a motor vehicle should be protected under the doctrine of strict liability even though the defect was not the cause of the collision which precipitated the injury. There is no rational basis for limiting the manufacturer's liability to those instances where a structural defect has caused the collision and resulting injury. This is so because even if a collision is not caused by a structural defect, a collision may precipitate the malfunction of a defective part and cause injury. In that circumstance the collision, the defect, and the injury are interdependent and should be viewed as a combined event. Such an event is the foreseeable risk that a manufacturer should assume. Since collisions for whatever cause are foreseeable events, the scope of liability should be commensurate with the scope of the foreseeable risks.

"In his dissent in *Evans* Judge Kiley wrote: 'The direction [of the law] in my opinion, leads to greater responsibility of manufacturers in designing, testing, and manufacturing products, with a purpose of giving reasonable protection against harm to purchasers in the use of the products for their intended purposes.' 359 F.2d at 826. Today we acknowledge Judge Kiley's foresight. The discernible trend in products liability law has been to increase the duty owed by manufacturers for injuries caused by their products. Indiana courts appear to be in step with this movement. We therefore find that we must overrule our previous decision in *Evans* in favor of a rule which we believe the Indiana Supreme Court would adopt if faced with this case. That rule is the rationale expressed by the Eighth Circuit in *Larsen:* a manufacturer of motor vehicles owes a duty to design and construct its product to be reasonably fit for its intended use and to be reasonably free from hidden defects which would render it unsafe for that use. The intended use of a vehicle encompasses the normal incidents of its being driven on the streets and highways, including the potentiality of collisions. This rule does not make manufacturers insurers of their products. The duty owed requires merely precautions to be taken to protect against an unreasonable risk of injury. Plaintiffs will still have the burden of proving that there is a defect presenting an unreasonable risk of harm and that such defect was the proximate cause of the injury."

*Id.* at 109–10 (footnotes omitted). The *Huff* court prophetically enunciated the rule that Indiana would adopt and follow. The rule as stated in *Larsen* and applied in *Huff* is consistent with Indiana's product liability law. *Masterman,* 530 N.E.2d at 315. As *Masterman* indicated, our product liability law does not require that the product must be the cause of some occurrence, or collision. Accordingly, we hold that an enhanced injury product liability claim is a viable cause of action in Indiana.

Under Indiana law a seller/manufacturer may be held liable for placing into the

stream of commerce any product in a defective, unreasonably dangerous condition if the product causes injury to a user or consumer while being used in a reasonably expected manner. Indiana Code section 33–1–1.5–3. We agree with the reasoning in *Larsen* that, as applied to motor vehicles, the intended use includes transportation and all the normal incidents and foreseeable consequences of driving, including the potential of a collision. Thus, Indiana law places a duty on the seller/manufacturer to design, manufacture, and sell motor vehicles that are free from hidden defects which would be unreasonably dangerous to a person during a collision. If a seller/manufacturer fails to fulfill this duty and a person is injured as a proximate cause of the unreasonable risk of harm presented by the defective product, liability may be imposed. In the present case, if the plaintiffs established that their enhanced injuries were proximately caused by a defective, unreasonably dangerous condition in the cab of the garbage truck, Crane could be held liable. Therefore, judgment on the evidence would be inappropriate if the evidence arguably supported an enhanced injury product liability claim.

■ Plaintiffs argue that they presented sufficient evidence to support the enhanced injury product liability claim. Crane disagrees and argues that even if Indiana recognizes an enhanced injury product liability claim the plaintiffs failed to present sufficient evidence to show that a product defect enhanced (*i.e.*, proximately caused) their injuries. Crane suggests that in order to prove that the product defect proximately caused them injury the plaintiffs must prove with exact specificity the degree and amount of the enhanced injuries. Crane argues the only way the plaintiffs can do this is to show, (1) the injuries that were caused by the product defect in the present action and (2) the injuries that would have been caused in an accident involving a non-defective product. Crane relies on the reasoning of *Huddell v. Levin* (3rd Cir.1976), 537 F.2d 726, to support this argument. The plaintiffs counter by arguing that the *Huddell* approach requires them to prove the impossible, and they rely

on the reasoning in *Mitchell v. Volkswagenwerk, A.G.* (8th Cir.1982), 669 F.2d 1199 and *Fox v. Ford Motor Co.* (10th Cir.1978), 575 F.2d 774. The plaintiffs argue they need prove only the actual injuries that were proximately caused by the product defect in the accident and not the hypothetical injuries that would have resulted in an accident involving a properly designed product.

The arguments and cases relied on by Crane and the plaintiffs represent the current division of authority on the issue of the plaintiff's burden of proving causation in an enhanced injury product liability claim. Recently the Third District addressed the plaintiff's burden of proof in an enhanced injury case and apparently adopted the *Huddell*, approach. *Masterman* 530 N.E.2d at 318. However, we have examined both approaches, and have decided that *Huddell* does not state the appropriate rule in Indiana. Therefore, we hold that the *Mitchell/Fox* line of cases states the better rule.

In *Huddell*, the plaintiffs presented evidence that showed that the defendants defectively designed a head restraint and that the decedent died as a result of hitting her head on the restraint during a rear end collision. Plaintiffs also presented evidence that decedent would not have died if the restraint had been designed properly. The Third Circuit Court of Appeals, in predicting New Jersey Law, determined that this proof was insufficient because an enhanced injury claim required a unique burden of proof scheme. The court reasoned as follows:

"We have set forth, *supra,* the basic elements of proof in an orthodox strict liability case under New Jersey law: a *defective* product *causing* injury. The simplicity of the general formulation belies the difficulty of applying it in the infinite variety of cases that arise. Unlike orthodox products liability or negligence litigation, crashworthy or second collision cases impugning the design of an automobile require a highly refined and almost invariably difficult presentation of proof in three aspects. First, in

establishing that the design in question was defective, the plaintiff must offer proof of an alternative, safer design, practicable under the circumstances. This the plaintiff did: plaintiff's expert Albert Fonda introduced into evidence the head restraints of several other automobile manufacturers which allegedly were better designed; and it was suggested that G.M.'s head restraint would have been safer if it had merely been turned around so that the 'ax-like' portion was not 'aimed' at the rear of the driver's head. Second, the plaintiff must offer proof of what injuries, if any, would have resulted had the alternative, safer design been used. This, in our view, was not satisfactorily established. We agree in this regard with Judge Barlow in *Yetter v. Rajeski*, 364 F.Supp. 105, 109 (D.N.J.1973) that 'it is absolutely necessary that the jury be presented with some evidence as to the extent of injuries, if any, which would have been suffered ... had the plaintiff's hypothetical design been installed ...' Third, as a corollary to the second aspect of proof, the plaintiff must offer some method of establishing the extent of enhanced injuries attributable to the defective design. Having failed to establish satisfactorily the second aspect, a plaintiff necessarily must fail with regard to the third.

"Albert Fonda testified that the accident would have been 'survivable' if the head restraint had been 'designed differently'. (650a). Dr. Geikas similarly testified that the accident would have been 'survivable' if the head restraint had been designed 'for distribution of load, attenuation of force.' (448a). The district court summarized the testimony: 'Plaintiff's experts testified unequivocally that if the head restraint had been designed to take these principles into account, Dr. Huddell would have survived the accident.' 395 F.Supp. at 75. But the record does not indicate the specific meaning of the term 'survivable', and there is no testimony as to the extent of injuries, if any, which would have resulted in a survivable crash. Although Dr. Geikas testified that there was no evidence of significant injury to vital organs from the accident as it happened, this ignored the possibility that injury to those organs might have been more severe if the great forces of the collision had been more widely distributed over the head and body by an alternate head restraint design. It was not established whether the hypothetical victim of the survivable crash would have sustained no injuries, temporary injuries, permanent but insignificant injuries, extensive and permanent injuries, or, possibly, paraplegia or quadriplegia."

*Huddell*, 537 F.2d at 737–38. Other jurisdictions have followed this reasoning in elevating the plaintiff's burden of proof in an enhanced injury cause of action. *Caiazzo v. Volkswagenwerk, A.G.* (2d Cir.1981), 647 F.2d 241; *Stonehocker v. General Motors Corp.* (4th Cir.1978), 587 F.2d 151; *Higginbotham v. Ford Motor Co.* (5th Cir. 1976), 540 F.2d 762. *See also Annot.*, 9 A.L.R.4th 494 § 3 (1981).

In *Fox*, the plaintiff brought suit for the death of both rear seat passengers following a head-on collision. The evidence indicated that defects in a 1970 Ford Thunderbird enhanced the injuries to produce death. In analyzing the plaintiff's burden of proof in an enhanced injury case the *Fox* court rejected the *Huddell* court's approach and determined that the plaintiff's burden of proof in an enhanced injury case should be no different than in any other tort case. The *Fox* court opined:

"Generally this duty to prove so-called enhanced damages is simply a part of the plaintiff's responsibility to prove proximate cause, that is, that the defendant in such a case is liable only for those damages which are within the orbit of risk created by him, but Ford would have us say that the plaintiffs were required to prove with specificity the injuries which flowed specifically from its deficiencies.

"The case which is relied on by Ford to illustrate its position is *Huddell v. Levin*, 537 F.2d 726 (3d Cir.1976). There the holding was that plaintiff in a collision case such as the present one had the burden of proving enhanced injuries and

that the presentation of evidence that the accident was survivable did not meet this burden. The thesis of this case was that collision cases are to be treated differently from other liability or negligence cases as far as the specificity of proof is concerned. It refused to follow the orthodox doctrines of joint liability of concurrent tort-feasors for injuries which flow from their concurring in one impact.

"We fail to see any difference between this type of case and the other case in which two parties, one passive, the other active, cooperate in the production of an injury. Each one's contribution in a causal sense must be established. Damages may be apportioned between the two causes if there are distinct harms or a reasonable basis for determining the causes of injury. Restatement of Torts, Second, § 433A."

*Fox,* 575 F.2d at 787. The reasoning in *Fox* was relied on by the Eighth Circuit Court of Appeals in *Mitchell.*

In *Mitchell,* the plaintiff suffered a paraplegic injury which under Minnesota law was indivisible as a matter of law and was not apportionable. In addressing the plaintiff's challenge to the jury's apportionment of damages the Eighth Circuit Court of Appeals, the same court that initially adopted the enhanced injury theory of liability in *Larsen,* examined the plaintiff's burden of proving causation in an enhanced injury case under Minnesota law. The court recognized the *Huddell* approach, and challenged the Third Circuit's reasoning. The *Mitchell* court stated,

"The primary difficulty we have with this analysis is that it forces not only the parties but the jury as well to try a hypothetical case. Liability and damage questions are difficult enough within orthodox principles of tort law without extending consideration to a case of a hypothetical victim. More realistically, the parties and juries should direct their attentions to what actually happened rather than what might have happened.

"By placing the burden of proof on a plaintiff to prove that the designer was the sole cause of not only an enhanced indivisible injury, but, in addition, that he would not otherwise have received injuries absent a defect, the injured victim is relegated to an almost hopeless state of never being able to succeed against a defective designer. The public interest is little served. We write to reaffirm that *Larsen* was not intended to create a rule which requires the plaintiff to assume an impossible burden of proving a negative fact. A rule of law which requires a plaintiff to prove what portion of indivisible harm was caused by each party and what might have happened in lieu of what did happen requires obvious speculation and proof of the impossible. This approach converts the common law rules governing principles of legal causation into a morass of confusion and uncertainty. In *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968), applying Michigan law in answering the manufacturer's concern over the possible unfair ramifications of liability for any enhanced injury, we explained:

'Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.'

"The argument is made that since the manufacturer's liability is only for the enhanced injury, without plaintiffs proving that the injury would not have occurred in the first collision, there is no proof of an enhanced injury. The difficulty with this reasoning is that where there is but a single indivisible injury (e.g., death, paraplegia) it requires plaintiffs to rely on pure speculation, since in many instances it is impossible to show which tortfeasor caused the indivisible harm. Such a rule ignores common law principles on legal causation. Our statement in *Larsen* should not be construed so as to subject a jury to a complete conjectural result. As Judge Learned Hand said over 50 years ago 'But we are

not ... justified, where certainty is impossible, in insisting upon it.'"

*Mitchell,* 669 F.2d at 1204–05. The *Mitchell* court went on to state that the enhanced injury claim recognized in *Larsen* was not a deviation from orthodox tort principles and rejected the argument that fresh legal rules of causation and proof were needed. Accordingly, Minnesota's rules of proof for cases involving concurrent tort feasors was applied to the enhanced injury claim. In applying these rules the court opined,

> "Thus we conclude that under Minnesota law the plaintiffs' burden of proof should be deemed satisfied against the manufacturer if it is shown that the design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. Furthermore, the extent of the manufacturer's liability depends upon whether or not the injuries involved are divisible such that the injuries can be clearly separated and attributed either to the manufacturer or the original tortfeasor. If the manufacturer's negligence is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors."

*Id.* at 1206 (citation omitted). Several jurisdictions have relied on the reasoning in *Fox* and *Mitchell* to reject the *Huddell* approach to the plaintiff's burden of proof. *Shipp v. General Motors Corp.* (5th Cir. 1985), 750 F.2d 418; *Richardson v. Volkswagenwerk, A.G.* (W.D.Mo.1982), 552 F.Supp. 73; *General Motors Corp. v. Edwards* (1985), Ala., 482 So.2d 1176; *Lee v. Volkswagen of American, Inc.* (1984), Okla., 688 P.2d 1283; *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.* (1984), 121 Wis.2d 338, 360 N.W.2d 2. *See also, Annot.,* 9 A.L.R.4th 494 § 4 (1981).

We agree with the reasoning in *Fox* and *Mitchell* which rejects the unique burden of proof scheme in *Huddell* that requires the plaintiff prove what injuries if any would have resulted in a hypothetical accident involving a safer or non-defectively designed product. This rule conflicts with our products liability law which has never required the plaintiff to prove the negative fact of what the injury would have been with a safer product. Furthermore, the problem we see with *Huddell* is that it appears to mix the issue of proximate cause with the issue of damage apportionment. This combination is based upon the belief that enhanced injury design defect cases cannot be decided under orthodox principles of products liability or negligence litigation, and upon the argument that the plaintiff cannot prove enhanced injuries without showing what injury would have resulted in a hypothetical accident involving a safer or non-defective product. We disagree with this belief and argument.

An enhanced injury design defect products liability case is no different than any other product liability case. The only difference is that concurrent tort feasor issues generally will be part and parcel of the plaintiff's case. Accordingly, the same basic burden of proof schemes used in product liability and concurrent tortfeasor cases should be applied to an enhanced injury product liability claim, and we refuse to follow the rule in *Huddell* which would change Indiana's burden of proof rules. Furthermore, we believe that application of Indiana's current products liability burden of proof scheme would limit the manufacturer's liability to enhanced injuries in "second collision" cases, because a plaintiff is required to prove the injury that was proximately caused (*i.e.,* enhanced) by the design defect. However, proof of a hypothetical accident is not required. Rather, the plaintiff can establish the enhanced (*i.e.,* proximately caused) injuries by establishing that the defectively designed product was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision. *See e.g., Huey v. Milligan* (1961), 242 Ind. 93, 104, 175 N.E.2d 698, 703; *Swanson v. Slagal* (1937), 212 Ind. 394, 413, 8 N.E.2d 993, 1001; *Johnson v. Bender* (1977), 174 Ind.App. 638, 643, 369 N.E.2d 936, 939–40. *See also,* 21 I.L.E.

*Negligence* § 65 (1959). The foregoing burden of proof requires the plaintiff to distinguish between the injuries suffered in the "first collision" and those sustained in the "second collision". Naturally, the quantum of proof required to distinguish the first and second collision injuries will vary from case to case depending on the facts and circumstances. However, the plaintiff is not required to prove that the defective product was the sole proximate cause of the *enhanced* injury. Indiana's orthodox principles of concurrent tortfeasor liability provide that more than one cause can proximately lead to an injury and the defendant's act need not be the sole proximate cause. *Elder v. Fisher* (1966), 247 Ind. 598, 606, 217 N.E.2d 847, 852; *Koroniotis v. LaPorte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656, 659. However, where the evidence shows that injuries were caused solely by the "first collision" the plaintiff cannot recover from the manufacturer for those injuries. *Sumnicht*, 360 N.W.2d at 11. Contrary to the argument in *Huddell* we believe that the foregoing Indiana rules of product and concurrent tortfeasor liability adequately limits the manufacturer's liability to enhance injuries as contemplated in *Larsen.* Accordingly, we reject the Third District's apparent adoption of a contrary rule in *Masterman.* Therefore, we hold the following burden of proof scheme applies to an enhanced injury defective design product liability claim: First, the plaintiff must prove that the manufacturer placed into the stream of commerce a defectively designed, unreasonably dangerous product. Second, the plaintiff must prove that a feasible safer alternative product design existed. Third, the plaintiff must prove that after the original impact or collision the defectively designed product proximately caused (*i.e.*, enhanced) the injuries that resulted. As indicated previously this third element requires the plaintiff to distinguish between the injuries suffered in the first and second collisions. The plaintiff can fulfill this third element by establishing that the defectively designed product was a substantial factor in producing damages over and above those which were probably caused as a result of

the original impact or collision. Once the plaintiff establishes the foregoing the burden shifts to the defendant to establish and prove that the damages that arose from the enhanced injury are apportionable. *See e.g., Mitchell*, 669 F.2d at 1208–09; *Lee*, 688 P.2d at 1289. *See also*, Restatement (Second) of Torts § 433(B) (1965). Initially, the trial court should determine whether the injury to the plaintiff is capable of being apportioned. *Mitchell*, 669 F.2d at 1208–09; Restatement (Second) of Torts § 434 (1965). If the court determines that the injury to the plaintiff is indivisible as a matter of law and also determines that no reasonable basis exists to determine which wrongdoer caused what portion of harm, then all defendants, including the manufacturer, may be held jointly and severally liable. *Mitchell*, 669 F.2d at 1209; *E.Z. Gas, Inc. v. Hydrocarbon Transp., Inc.* (1984), Ind.App., 471 N.E.2d 316, 321. However, the determinations of divisibility and apportionability necessarily involve the weighing of fact. Thus, if the court finds that reasonable minds could differ on the issues of whether the plaintiff's injuries are divisible and apportionable, then the trial court should submit the issues to the trier of fact. *Richardson*, 552 F.Supp. at 80, 83–84; *Lee*, 688 P.2d at 1289.

In the present case, the plaintiffs presented evidence that Crane placed into the stream of commerce a defectively designed, unreasonably dangerous product. The evidence indicated that the low entry cab design used by Crane had a weaker frontal configuration and placed the driver and passenger dangerously close to the potential point of impact in a foreseeable head-on collision. The plaintiffs also presented evidence of a safer alternative product design. This evidence showed that a Lo–Dal garbage truck used a cab and chassis design which contained stronger bumpers and which placed the driver and passenger thirty-six inches (36″) further away from the potential point of impact in a foreseeable head-on collision. Use of this design would have reduced or eliminated the pincer action that crushed Jackson's legs. Finally, the plaintiffs presented evi-

dence which indicated that the pincer action caused severe injury to Jackson's legs. The jury could have found from this evidence that the cab and chassis design defect was a substantial factor in producing injury to Jackson which exceeded the injury which was probably caused as a result of the original impact or collision. Although this evidence did not establish the amount of injury that would have resulted in a hypothetical accident involving a safer or non-defective cab and chassis design, we indicated previously that the plaintiff was not required to prove this negative fact. Thus, evidence existed which arguably supported plaintiffs' enhanced injury product liability claim. Crane argues, however, that judgment on the evidence was appropriate because the evidence established that the defective condition was open and obvious. Although evidence was presented on this issue, we cannot say that it leads inescapably to a finding and judgment in favor of Crane. Therefore, the trial court improperly granted judgment on the evidence, and the judgment in favor of Crane is reversed.

Affirmed in part, and reversed and remanded for a new trial on the enhanced injury product liability claim against Crane.

Costs assessed as follows:

Plaintiffs—one half.

Crane—one half.

Caito and Warrum—0.

ROBERTSON and BUCHANAN, JJ., concur.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, John F. Crawford, Jr., Pros. Atty., Michael S. Vass, Deputy Pros. Atty., Crown Point, for appellant.

David C. Jensen, Richard A. Hanning, Charles W. Webster, Eichhorn, Eichhorn & Link, Hammond, for appellees.