Mark WHITTEN, Appellant
(Plaintiff Below),

v.

KENTUCKY FRIED CHICKEN CORPO-
RATION, a corporation, and KFC Na-
tional Management Company, a corpo-
ration, Appellees (Defendants Below).

No. 75A03–9009–CV–395.

Court of Appeals of Indiana,
Third District.

May 16, 1991.

Rehearing Denied July 10, 1991.

Glenn J. Tabor, Roger A. Weitgenant, Valparaiso, for appellant Mark Whitten.

James A. Cheslek, Hoeppner, Wagner & Evans, Valparaiso, for appellees Kentucky Fried Chicken Nat. Management Co. & Kentucky Fried Chicken Corp.

Paul B. Poracky, Spangler, Jennings & Dougherty, Merrillville, for appellee Kentucky Fried Chicken Corp.

STATON, Judge.

Kentucky Fried Chicken Corporation (KFC) is engaged in the business of the sale and the franchising of others to sell "Col. Sanders' Recipe Kentucky Fried Chicken" and other food products to the general public. On August 16, 1972, KFC entered into an "approved supplier agreement" with Commercial Appliances, Inc. (Commercial), which later changed its name to Collectramatic, Inc. (Collectramatic), to approve commercial fryers to be used in Kentucky Fried Chicken restaurants.

On November 29, 1971, prior to the KFC/Commercial agreement, Chuck Wheeler Restaurants (Wheeler) purchased fifty-four model PFC 720 commercial pressure fryers from Commercial for use in its restaurants. Five of these fryers were installed at Wheeler's Valparaiso Kentucky Fried Chicken restaurant. At the time which the fryers were purchased, there was no "approved supplier agreement" regarding the fryers.

On May 12, 1976, Wheeler entered into a renewal of its franchise agreement with KFC. Several clauses of the franchise agreement related to the requirement that the franchisee use equipment approved by KFC for the preparation of chicken.

In the fall of 1982, Wheeler's Valparaiso restaurant hired Mark Whitten, a sophomore at Portage High School, to help prepare food and perform general cleanup duties. As part of the evening ritual on October 19, 1982, Whitten was asked to clean several of the PFC 720 fryers. The customary cleaning method used by this restaurant was as follows: 1) drain the cooking oil from the cooking vessel into a container; 2) detach the drop-in collector basin connected to the bottom of the fryer, scrape off the residual bits of chicken and oil and reattach the basin; 3) fill the inside of the cooking vessel with water; 4) close the lid and turn the pressure fryer on at 375 degrees for 45 minutes (the same time and temperature used to cook chicken); 5) release the steam pressure through a vent at the back of the fryer, leaving the vent open a couple of seconds after the steam evaporated to ensure that the pressure had subsided; and 6) open the lid and drain the water.[1] On this particular day, step 5 was apparently not effective, and the fryer continued to be under pressure. When Whitten opened the lid of the fryer, hot water and steam rushed out of the fryer, enveloping the right side of Whitten's body. He sustained severe burns necessitating intensive treatment and skin grafts and causing scarring over a large portion of the right side of his body.

Whitten filed suit against KFC, KFC National Management Company (KFC Management), Collectramatic, Underwriters Laboratories, Inc and UL, Inc. (who allegedly approved the design for the PFC 720). Collectramatic, Underwriters Laboratories, Inc., and UL, Inc. were dismissed via summary judgment, a determination which Whitten does not appeal here. The trial court later granted summary judgment dismissing counts II through V of Whitten's complaint against KFC and KFC Management. A second motion for summary judgment was granted on May 15, 1990 on Counts VI through VIII of Whit-

---

1. KFC alleges and the trial judge found that this was not the approved method of cleaning the fryer. However, we were not favored with a manual or instructions to the PFC 720 which would indicate whether this method was appropriate. The record does contain a copy of wall-mounted operating instructions approved by KFC which describe a different cleaning method, but these instructions were apparently not implemented until after the agreement between Commercial and KFC, nearly a year after Wheeler purchased the PFC 720 fryers.

ten's complaint against KFC and KFC Management and final judgment was entered in favor of both defendants. Whitten appeals the May 15 order, contending summary judgment was improperly granted. We reverse.

The standard to be applied when reviewing the grant or denial of summary judgment is well settled. On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Boone County Area Plan Com'n v. Kennedy* (1990), Ind. App., 560 N.E.2d 692, 694, *transfer denied.* Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Bischoff Realty, Inc. v. Ledford* (1990), Ind.App., 562 N.E.2d 1321, 1323. Summary judgment is not to be employed as an abbreviated trial; it is a lethal weapon and courts must be mindful of its aims and beware of overkill in its use. *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, 328; *Huffman v. Monroe Cty. Com. School Corp.* (1991), Ind.App., 564 N.E.2d 961, 963, *transfer pending.*

In addition, where, as here, the trial court enters findings of fact and conclusions of law, we afford them a two-tier standard of review. First, we must determine if the evidence supports the findings, and second, we must determine if the findings support the judgment. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *transfer denied.* The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *Brancheau v. Weddle* (1990), Ind.App., 555 N.E.2d 1315, 1317. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Indiana Dept. of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338, 1341, *transfer denied.*

The trial court's entry of summary judgment was premised upon the following conclusions drawn from the facts:

The Defendants had no control or direction over its franchisee Chuck Wheeler Restaurants in regard to the manner and means of work of the franchisee's employees. When the particular fryer was purchased there was no mandated approved supplier list concerning the fryer. The cleaning method used by the plaintiff in "boiling out" the fryer was not an approved method of cleaning the fryer.

There was no duty imposed on these Defendants and there was no act or omission on their part which could be the proximate cause of the plaintiff's injuries. There are no material facts in dispute and the law is with the Defendants. Their respective Motions for Summary Judgment should be granted.

Record at 525–526. Thus, the trial court found 1) the defendants owed no duty to Whitten, and 2) the defendants' acts or omissions were not the proximate causative factors of Whitten's injury.

### I.

### *Duty*

The trial court's judgment related to the three remaining counts of Whitten's complaint. Count VI, styled as "franchisor liability," alleged negligence on the part of KFC in the failure to warn of alleged defects in the fryer, failure to inform of injuries to others from similar fryers, and failure to inform of corrective measures to prevent injury. Count VII alleged willful and wanton misconduct on the part of KFC for the above omissions and requested punitive damages. Count VIII alleged negligence on the part of KFC Management for failure to warn of alleged defects in the fryer, failure to advise Wheeler of corrective measures, failure to adequately inspect the premises, and allowing the allegedly defective fryer to be used.[2]

---

**2.** Whitten does not allege vicarious liability for the acts of KFC's franchisee. For cases discussing franchisor liability based on agency, see Annotation: Vicarious liability of private franchisor, 81 A.L.R.3d 764 (1977); *Clem v. Steveco,*

*Inc.* (1983), Ind.App., 450 N.E.2d 550. The franchise agreement in question provided that there was no agency relationship created between the parties, but that the relationship was intended

"Franchisor liability" was addressed by the Indiana courts in *Clem v. Steveco, Inc.*, *supra* n. 2. In *Clem*, the plaintiff's decedent was an employee at a Seven–Eleven convenience store when she was abducted and murdered by a man who robbed the store. Her estate filed suit against Southland Corporation, the franchisor of the Seven–Eleven chain of stores, alleging negligence in the failure to provide or require adequate security measures. The trial court granted a motion to dismiss and the Court of Appeals reversed, stating:

> We agree ... that franchise agreements commonly involve questions of material fact which cannot be disposed of by summary judgment. Therefore, preliminary disposition of the question of the amount of control a franchisor retains is generally inappropriate on a motion to dismiss for failure to state a claim upon which relief could be granted because the question commonly presents a question which is not addressable by a T.R. 12(B)(6) motion.

*Id.* at 555–556. The *Clem* court relied on *Coty v. U.S. Slicing Machine Company* (1978), 58 Ill.App.3d 237, 15 Ill.Dec. 687, 373 N.E.2d 1371 and *Wise v. Kentucky Fried Chicken Corp.* (D.N.H.1983) 555 F.Supp. 991.

*Coty* and *Wise* recognized two foundations upon which the direct liability of a franchisor may rest. The first is embodied in the Restatement (Second) of Torts § 414, and the second is found in the Restatement (Second) of Torts § 324A.

### A.

### Section 414

■ Section 414 of the Second Restatement of Torts provides:

**§ 414. Negligence in Exercising Control Retained by Employer**

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is

to be that of independent contractors. Record,

caused by his failure to exercise his control with reasonable care.

Thus, in franchisor-franchisee cases it is the task of the trier of fact to determine to what extent the franchisor is able to control the operations of the franchisee. The amount of control sufficient to impose liability "must consist of something more than a general right to make suggestions or recommendations or to order the work stopped or resumed." *Coty, supra,* 15 Ill. Dec. at 691, 373 N.E.2d at 1375, *quoted in Clem, supra,* at 555. *See also* Restatement (Second) of Torts § 414, comment c.

The facts in *Wise v. Kentucky Fried Chicken Corp., supra,* are strikingly similar to those in the present case. In *Wise,* an employee of a KFC franchisee was burned by hot cooking oil from an allegedly defective Collectramatic pressure fryer during the course of his employment. Citing § 414 of the Restatement, the district court for the District of New Hampshire denied KFC's motion for summary judgment. The court distinguished *Coty, supra,* finding that the franchise agreement raised unresolved issues of material fact:

> Summary judgment would not be appropriate on these facts, however. Unlike *Coty, supra,* the instrumentality alleged to have caused the injury in this case is one purchased with the approval, if not at the direction, of defendant. The Agreement filed with the Court indicates the existence of a sophisticated system for selecting, approving, testing, recommending, and maintaining quality control over certain equipment. The Agreement obligates KFC to inform franchisees of proven methods of quality control. Moreover, that same Agreement provides that all franchisees must operate in conformity with a confidential operating manual, a manual which has not been provided to the Court. Both sets of provisions of the Agreement—the provisions pertaining to approved suppliers and the provisions pertaining to KFC's operating manual—themselves raise questions of material fact as to the degree of control or direction KFC retained over the equip-

p. 328.

ment purchased by its franchisees and the franchise operation as a whole.

*Id.* at 995.

KFC attempts to distinguish *Wise* on the basis that the "approved supplier agreement" was entered into after the purchase of the PFC 720 in question, and therefore the Agreement did not grant any degree of control over the existing fryers. However, the agreement speaks not only to fryers to be manufactured in the future, but acknowledges that some KFC franchisees were using earlier Collectramatic fryers, and makes provisions for the modification of those fryers to conform to the KFC approved model. Under the agreement, KFC also was to notify its present franchisees that the model contemplated by the agreement was approved for use by KFC, apparently effective upon the date of the agreement. Moreover, the 1976 renewal franchise agreement specifically required that the franchisee use KFC-approved equipment if available. KFC could have required strict compliance with this provision as a condition of renewal. We find that there are material issues of fact precluding summary judgment as to whether KFC could be held liable under Restatement (Second) of Torts § 414.

## B.

### Section 324A

The next basis of liability recognized by the franchisor-franchisee cases is found in Restatement (Second) of Torts § 324A, which provides:

**§ 324A. Liability to Third Person for Negligent Performance of Undertaking**

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The *Wise* court relied upon 324A in concluding that the jury could find that KFC had, at minimum, a duty to warn. *Id.* at 996. Indiana cases have cited this section of the Restatement with approval. *See e.g., Baker v. Midland–Ross Corp.* (1987), Ind.App., 508 N.E.2d 32, *transfer denied.*

In *Papastathis v. Beall* (1986), 150 Ariz. 279, 723 P.2d 97, *reconsideration denied,* the plaintiff's decedent was struck on the head by a soft drink can which fell from an allegedly defective soft drink dispenser rack. Citing *Wise,* the Court of Appeals of Arizona affirmed a jury verdict against the defendant franchisor, holding that the franchisor could be held liable under Restatement (Second) of Torts § 324A for the negligent selection, recommendation, and inspection of the dispenser racks. *Id.* 723 P.2d at 100.

■ Here, a jury could find pursuant to subsection (a) of the Restatement that KFC undertook to recommend or select a safe fryer for the use of the employees of its franchisees, and increased the risk to Whitten due to KFC's failure to exercise reasonable care. A jury could also find pursuant to subsection (b) of the Restatement that KFC undertook to perform a duty owed by Wheeler to Whitten, i.e. the recommendation or selection of safe equipment to be used by Wheeler's employees. In addition, the franchise contract provided for the right to inspect to determine compliance with the contract specifications. KFC admitted in its answer that it had exercised that right of inspection. We therefore conclude that there are issues of fact which remain to be resolved regarding KFC's liability under section 324A of the Restatement.

## C.

### Contributory Negligence

■ KFC argues that regardless of our resolution of the issue regarding the exist-

ence of a duty by KFC and KFC Management, summary judgment was proper because Whitten's deposition testimony shows he was contributorily negligent as a matter of law.[3] Whitten testified that he knew that the fryers worked under pressure, that he had to release the pressure before opening the lid, that there would still be boiling water in the fryer after venting the steam, and that his own common sense told him never to attempt to open a fryer which was under pressure. However, Whitten also testified that he followed the normal procedure for cleaning the fryers used at the restaurant where he worked, that he thought he vented all of the steam out of the fryer, and that the fryer had no pressure gauge or other device indicating that pressure remained in the fryer. Summary judgment is rarely suitable for resolving the question of contributory negligence, an issue which is most appropriately left for determination by the trier of fact. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210–1211. Such is the case here.

## II.

### Proximate Cause

The trial court found "no act or omission on [the] part [of KFC or KFC Management] which could be the proximate cause of the Plaintiff's injuries." Record at 525. We identified several acts or omissions above which could result in KFC's liability under Restatement (Second) of Torts §§ 324A and 414. We cannot say as a matter of law that a jury could not find those acts or omissions to be the proximate cause of Whitten's injuries. The issue of causation is best left to determination by the trier of fact. *Jackson, supra.* Thus, issues of material fact remained as to proximate cause.

## III.

### Punitive Damages

■ The trial court apparently dismissed the punitive damages claim because it

found that Whitten failed to establish his primary claim against KFC. However, in support of the dismissal of the punitive damages claim, KFC argues that Whitten has failed to show clear and convincing evidence of malice, fraud, gross negligence, or oppressive conduct. KFC essentially argues that there is insufficient evidence to allow Whitten to sustain a claim for punitive damages. We cannot say that there is a complete failure of such evidence as a matter of law. The question of punitive damages is ultimately a question of fact for the jury to decide. *Southern School Buildings, Inc. v. Loew Electric, Inc.* (1980), Ind.App., 407 N.E.2d 240, 253, *transfer denied.* Accordingly the trial court erred in dismissing Whitten's punitive damages claim.

## IV.

### KFC Management

KFC argues that even if we find that summary judgment was improper as to the claims against KFC, we should still affirm the grant of summary judgment in favor of KFC Management. Whitten's complaint stated "[t]hat prior to October 19, 1982, the defendant, KFC MANAGEMENT, entered into an agreement with KFC CORPORATION, its parent corporation, whereby the defendant, KFC MANAGEMENT, would inspect the premises and operations of all Kentucky Fried Chicken franchisee restaurants located in a certain geographical area, including the Kentucky Fried Chicken franchisee store located at 2402 North Calumet Avenue in Valparaiso, Indiana." Record at 19. KFC Management denied these allegations. It argues that this denial coupled with the fact that its name does not appear within the franchise agreement or the approved supplier agreement establishes that the trial court's entry of summary judgment in its favor was proper.

■ Summary judgment is not proper if the court must weigh conflicting evi-

---

**3.** The incident alleged in Whitten's complaint occurred before the enactment of the Comparative Fault Act, IC 34–4–33–1 *et seq.*

dence to reach a decision. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279, 281, *reh'g denied.* Unless and until the movant makes a showing that there is a lack of a material factual issue, the nonmoving party may rest upon the allegations of his pleadings and other materials then of record. *ITT Com. Finance v. Union Bank and Trust* (1988), Ind.App., 528 N.E.2d 1149, 1151.

■ Here, KFC Management did not show that there was a lack of a material factual issue regarding an agreement between KFC and KFC Management. By denying this allegation in Whitten's complaint, it merely established that there was a dispute as to this issue. The fact that KFC Management's name did not appear in any of the documents filed with the court does not establish that there was no collateral agreement between KFC and KFC Management; in fact, Whitten appears to base his claim upon a collateral agreement rather than upon the franchise contract. Whitten was entitled to rely on the allegations of his pleadings until KFC Management established the lack of a factual issue regarding his claim against it. Therefore, we conclude that the trial court should not have granted summary judgment in favor of KFC Management.

Reversed.

SHARPNACK, J., concurs and files separate opinion.

HOFFMAN, P.J., dissents and files separate opinion.

SHARPNACK, Judge, concurring with separate opinion.

I concur in the decision to reverse the grant of the defendants' motion for summary judgment by the trial court, but write separately to discuss my reasons for doing so.

As I understand the majority opinion, it finds in §§ 324A and 414 of the Restatement (Second) of Torts direct authority for imposing a duty on the franchisor to exercise reasonable care for the safety of the employees of the franchisee.

I do not believe that § 324A has any application to this case. The franchisee has not requested or engaged the franchisor to render to it any service such as an inspection of its operations or equipment. Rather, the franchisor has reserved the right to make such inspections for its own benefit to promote uniform quality of the products sold by its franchisees.

Similarly, I do not believe that § 414 has any direct application to this case. That section addresses the situation where the employer of an independent contractor retains control of some part of the work to be done. The employer is then held to a duty to use reasonable care in exercising that control. Franchisees in general and this franchisee in particular are not *employed* by the franchisor. The relationship between the franchisor and the franchisee is not that of employer and independent contractor. I am aware of the provision in the agreement, "[t]he only relationship between the parties shall be that of independent contractors, and neither party shall be responsible for any act or omission of the other or any employee of the other." The point of that provision is more to negate liability under the doctrine of *respondeat superior* than it is to give a precise legal description that is applicable for all purposes. The parties cannot contract away whatever liabilities they may have to third parties, no matter what they choose to call themselves or agree to between themselves. *Robins Dry Dock & Repair Co. v. Navigazione L. Triestina* (1933), 261 N.Y. 455, 463, 185 N.E. 698, 700.

I do believe that, by analogy, a principle can be derived from § 414 that is applicable to this case. I see that principle to be that one who by contract has the right to exercise control over the activities of another has a duty, when exercising such control, to use reasonable care for the protection of those who could be injured if such care is not used. I believe that the courts in *Coty v. U.S. Slicing Machine Company* (1978), 58 Ill.App.3d 237, 15 Ill.Dec. 687, 373 N.E.2d 1371; *Wise v. Kentucky Fried Chicken Corp.* (D.N.H.1983) 555 F.Supp. 991; and *Clem v. Steveco, Inc.* (1983), Ind. App., 450 N.E.2d 550, looked to the inde-

pendent contractor principles by analogy and not for direct authority.

The terms of the franchise agreement raise sufficient questions as to the control retained by the franchisor, KFC Corporation, to require some factual showing by that defendant to which the plaintiff would need to respond to demonstrate a genuine issue of material fact. No party has done anything to show the trial court or this court any thing of a factual nature on the most important aspect of the case which is what the defendants actually did or did not do and what the defendants actually did or did not know, with the single exception that the defendant KFC Corporation did admit in its answer that it did exercise its right to enter and inspect. Defendant KFC Corporation has, in effect, shown us the agreement which at least suggests that some duty may exist and then done nothing to show that the duty was discharged or did not exist. In such circumstances, summary judgment is not appropriate.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent. The decision in *Clem v. Steveco, Inc.* (1983), Ind.App., 450 N.E.2d 550, 555–56, rested upon a determination that the trial court improperly looked beyond the complaint in ruling upon the defendant/franchisor's T.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief could be granted. Here, the trial court was presented with a question of law on summary judgment.

In relevant part the trial court found: 1) that at the time the fryer was purchased there existed no approved supplier agreement between the supplier of the fryer and the defendants; 2) that the defendants did not retain control or direction over the manner and means of work of the franchisee's employees; 3) that no duty was imposed upon the defendants; and 4) that no act or omission by the defendants could be considered a proximate cause of the plaintiff's injuries. The court's findings did not require resolution of a material factual dispute.

While not binding upon this Court, the reasoning in *Coty v. U.S. Slicing Mach.*

*Co., Inc.* (1978), 58 Ill.App.3d 237, 15 Ill. Dec. 687, 691, 373 N.E.2d 1371, 1375, is instructive. The court discussed the analogy between independent contractor/employer relationships as a basis for liability and the franchisee/franchisor agreements. The court stated:

"[T]he mere reservation of 'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations ... does not mean that the contractor is controlled as to his methods of work, or as to operative detail.' "

*Id.* at 691, 373 N.E.2d at 1375, (quoting *Weber v. Northern Illinois Gas Company* (1973), 10 Ill.App.3d 625, 639, 295 N.E.2d 41, 50, citing the Restatement of Torts (Second), Section 414).

The findings of the trial court, coupled with the reasoning in *Coty* adequately support the entry of summary judgment. Therefore, I would affirm the judgment of the trial court.