**David DUBOIS, as trustee of the bankruptcy estate of FOB of Merrillville, Inc., d/b/a Foddy's, et al., Plaintiffs,**

v.

**George KEPCHAR, individually and d/b/a Century 21 Kepchar Realtors, et al., Defendants.**

**No. 2:94 cv 87.**

United States District Court,
N.D. Indiana,
Hammond Division.

June 15, 1995.

Lawrence A. Kalina, Spangler Jennings and Dougherty P.C., Merrillville, IN, for plaintiffs.

Gilbert F. Blackmun, Blackmun, Bomberger and Moran, Peter C. Bomberger, Friedrich Bomberger Tweedle and Blackmun P.C., Highland, IN, Byron K. Mason, Indianapolis, IN, for defendants.

### ORDER

MOODY, District Judge.

FOB of Merrillville, Inc. ("FOB"), owned (or may still own) a restaurant called Foddy's. FOB's president, Robert Forster, wanted to sell Foddy's, and listed it for sale with Century 21 Kepchar Realtors, Inc. ("Kepchar"), after consulting with Thomas Crumpton, a licensed real estate broker associated with Kepchar. (Except where individual identities are relevant, references to "Kepchar" hereafter include Crumpton and other Kepchar principals and agents.) Crumpton presented an offer by potential buyer Steven Hutka. FOB, through Forster, accepted the offer. Hutka refused to close, allegedly because Crumpton had presented an offer to Forster containing terms that Hutka had not authorized, for example, that Hutka would pay the real estate broker's commission on the sale.

FOB declared bankruptcy. On behalf of its estate, the bankruptcy trustee (hereinafter, "FOB") brought this action alleging that Crumpton negligently presented incorrect offer terms to FOB, causing the potential sale to collapse, and thereafter made false representations to FOB concerning Hutka's willingness and ability to close, causing FOB financial harm. Named as defendants are Crumpton, Century 21 Kepchar Realtors, Inc. under various names, its principal, George Kepchar, and three corporations[1] in the "Century 21 family:" Century 21 Real Estate Corp., Century 21 Great Lakes, Inc. and Century 21 Great Lakes, Inc., Indiana Region. These latter three defendants have moved for summary judgment.[2]

By way of background (not a statement of undisputed facts upon which the court's ruling rests), the moving defendants describe "Century 21" as a franchised name and methodology for selling real estate. Every Century 21 realty office throughout the United States (and internationally), of which Century 21 Kepchar Realtors was one, is a local-ly- and independently-owned-and-operated business. Century 21 Real Estate Corp. ("Century 21 REC") owns the "Century 21" name and trademark, and engages in the business of promoting and franchising that name and the "Century 21 system." The Century 21 system is a trade-secret methodology designed to help local real estate agents make sales. Century 21 REC owns no Century 21 realty offices and conducts no real estate brokerage business.

Century 21 REC wholly owns all of the stock of seven corporations that act as regional subfranchisors, one of which is defendant Century 21 Great Lakes, Inc. Century 21 Great Lakes, Inc. has the right to sublicense the Century 21 trademark and system to licensed real estate brokers in six states including Indiana. Century 21 Great Lakes, Inc., Indiana Region ("Century 21 Indiana")[3] acts as the administrative liaison between Century 21 Great Lakes, Inc. and franchisees in Indiana. Century 21 Indiana provides to those franchisees training seminars regarding the Century 21 system. Neither Century 21 Great Lakes, Inc. nor Century 21 Indiana own any Century 21 realty offices or engage in real estate brokerage business.

FOB's complaint alleges that Century 21 REC, Century 21 Great Lakes and Century 21 Indiana are vicariously liable for Crumpton's negligence because of their "training, supervising, controlling, monitoring and evaluating." In addition, FOB alleges that these three defendants are liable for their own negligent "control, supervision, monitoring, and evaluating of [Kepchar and Crumpton], as well as in the selection and/or granting of a Century 21 franchise to [Kepchar]." Complaint, ¶¶ 15, 16. Century 21 REC, Century 21 Great Lakes and Century 21 Indiana (hereafter collectively referred to as "Century 21," except where individual identities are relevant) contend in their motion for summary judgment that the record is devoid of

---

1. But see n. 3, below at p. 1097.

2. Actually, they have filed two motions for summary judgment, each addressing a different legal theory. For simplicity, the remainder of the discussion will refer to the motions collectively as one motion for summary judgment.

3. Century 21 Indiana appears not to be a separate legal entity but simply a division of Century 21 Great Lakes, Inc. This is not clear, however, from the undisputed evidence developed at this point.

any evidence to support any theory of liability against them arising from the unconsummated sale of Foddy's restaurant.

Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE requires that summary judgment be granted "forthwith" if the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Applying this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

In determining whether a genuine issue of material fact is in dispute, the trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993). At the summary judgment stage the trial court's function is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

"A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citation omitted).) In addition,

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial ... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514, 91 L.Ed.2d at 217; *First Bank Southeast, N.A. v. Predco, Inc.*, 951 F.2d 842, 846 (7th Cir.1992).

When the moving party does not bear the burden of proof, it need not produce evidence to negate the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265, 274–75 (1986). Instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. In the usual case, then, as here, a defendant's motion for summary judgment attempts to demonstrate that proof of an essential element of plaintiff's case is absent, putting the plaintiff to its proof on that issue.

To survive the motion, the plaintiff need not prove its case, but must make some showing of evidence sufficient to make its *prima facie* case a matter of factual dispute. *Id.* at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274–75. The trial court "should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues when there are none.'" *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir.1987), *cert. denied sub nom.*, 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988) (quoting *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972)).

Thus, the summary judgment inquiry addresses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. In simple terms, then, in a case where no material facts are disputed a summary judgment motion requires a judge to decide not whether he believes the non-movant will win the case, but instead whether any reasonable jury could decide the case in favor of the non-movant.

FOB's response to Century 21's motion, briefly stated, is that sufficient evidence exists to place in dispute whether Century 21 is vicariously liable because Kepchar was its apparent agent or because Century 21 controlled Kepchar to the degree necessary to impose liability under either principal/agent

or franchisor-franchisee theories of liability. In addition, FOB contends that the evidence shows that Century 21 itself was negligent by allowing Kepchar to engage in practices prohibited by the franchise agreement: 1) conducting business other than sale of real estate, and; 2) misusing the Century 21 trademark by publishing it without the phrase "each office is independently owned and operated."

## I. VICARIOUS LIABILITY THEORIES

### a. Apparent Agency

■ Manifestations made by a principal to a third party, which instill that party with a reasonable belief that another individual is the principal's agent, create an apparent agency by which the principal may be held liable for acts within the scope of the apparent authority. *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164, 1166–67 (Ind. 1989); *Swanson v. Wabash College*, 504 N.E.2d 327, 331–32 (Ind.Ct.App.1987). At one time this liability was limited to contract: the "doctrine of presumed, implied or apparent authority will not operate to hold an innocent principal for the tort of his agent." *Janeczko v. Manheimer*, 77 F.2d 205 (1935).

The modern view, however, appears to be that "respondeat superior … can also be used to impose liability on a principal for torts committed by an agent within the scope of the agent's actual or apparent authority." *Tippecanoe Beverages v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 637 (7th Cir. 1987). Section 267 of the RESTATEMENT provides: "One who represents that another is his servant or other agent and thereby causes a third person to justifiably rely upon the care or skill of such apparent agent is subject to liability to the third person caused by the lack of care or skill of the one appearing to be a servant or agent as if he were such." RESTATEMENT (SECOND) OF AGENCY § 267 (1958); *see also American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 565–66, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330, 339–40 (1982) ("[U]nder general rules of agency law, principals are liable when their agents act with apparent authority and commit torts …"); *United States v. One Parcel of Land*, 965 F.2d 311, 319 (7th Cir.1992) ("[P]rincipals are liable when their agents act with apparent authority and commit torts even if the principal derives no benefit …"); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 70, p. 508 (5th ed.1984).

Consistent with this modern view, Illinois, Michigan and Wisconsin have determined that a hospital holding itself out as providing medical care may be held liable for the negligent acts of physicians retained by it (as independent contractors) because they act with apparent authority. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill.2d 511, 190 Ill.Dec. 758, 765, 622 N.E.2d 788, 795 (1993); *Grewe v. Mt. Clemens Hospital*, 404 Mich. 240, 273 N.W.2d 429 (1978); *Pamperin v. Trinity Memorial Hospital*, 144 Wis.2d 188, 423 N.W.2d 848 (1988). One Wisconsin appellate court has held that Century 21 may be held liable for the negligence of its franchisees under apparent agency on an appropriate evidentiary showing. *McDonald v. Century 21 Real Estate Corp.*, 111 Wis.2d 600, 331 N.W.2d 606 (1983).

Although one Indiana appellate court has cited *Pamperin* without criticism (or explicit approval), *Hospital Corp. of America v. Hiland*, 547 N.E.2d 869, 874 (Ind.Ct.App.1989), it is not entirely clear that Indiana has adopted the principle of tort liability based on apparent agency as espoused by § 267 of the RESTATEMENT. *Swanson*, after considering whether an apparent agency existed, found the issue irrelevant in any event, concluding that Indiana imposes tort liability not based on agency but on respondeat superior where a master-servant relationship exists:

> [T]here is no legal or factual basis for liability on Wabash's part under an agency or employment theory.... "The *tort* liability of the principal expressed in the doctrine of respondeat superior is based not upon the agency relationship (authorization or ratification) but upon the employer-employee relationship."

*Swanson*, 504 N.E.2d at 332 (citing *Mathes v. Ireland*, 419 N.E.2d 782, 786 (Ind.Ct.App. 1981)); *see also Bitzer v. Pradziad*, 571 N.E.2d 593, 596 (Ind.Ct.App.1991) ("[I]n our system of tort liability based upon fault, it is

the right of the party sought to be held liable to control the conduct of the person who actually caused the injury that creates the necessary nexus." [footnote omitted] ).

Recently, however, the Indiana Supreme Court cited § 267 with implicit approval. In *Hinshaw v. Bd. of Commissioners of Jay County*, 611 N.E.2d 637 (Ind.1993), the Court determined which claims were meant to come within the immunity provision of subsection 9 of the Indiana Tort Claims Act. Ind.Code § 34–4–16.5–3(9). Concluding that the provision was meant to apply to cases seeking to impose vicarious liability on governmental entities for conduct of third parties not within the scope of employment as a governmental employee, the Court remarked:

> The law has long recognized a number of circumstances in which tort liability may be vicariously imposed upon persons for the conduct of agents who are not employees or subject to any right of control by the employer.

*Id.* at 640. In support of this statement, the Court, in addition to § 267, cited *Soft Water Utilities, Inc. v. LeFevre*, 159 Ind.App. 529, 308 N.E.2d 395 (1974), as recognizing that tort liability may attach to a principal via apparent authority. *Soft Water Utilities* held that the issuer of stock could be held liable for a broker's misrepresentations regarding the stock where the offering prospectus stated that the broker had an exclusive contract with the issuer for the sale, thus creating apparent authority. *Id.* 308 N.E.2d at 399.

■ In light of *Hinshaw*, this court concludes that the Indiana Supreme Court would, in an appropriate case, follow RESTATEMENT § 267 and impose tort liability on a person for acts by a third party within the scope of apparent authority created by the person sought to be held liable. Such apparent authority exists when some form of communication, direct or indirect, by a principal, instills in the mind of a third party a reasonable belief that another individual is the principal's agent. *Pepkowski*, 535 N.E.2d at 1166–67. The issue raised by Century 21's summary judgment motion, then, is whether FOB has come forward with sufficient evidence to create a triable issue of fact as to

whether Century 21 created the appearance that Kepchar acted as its agent.

■ In response to Century 21's motion contending there are no facts in evidence from which it could be found that Kepchar acted with apparent authority, FOB has filed the affidavit of its president, Forster. In his affidavit Forster testifies:

> I decided to enter into the listing agreement with Crumpton and Century 21 Kepchar because, among other things, I thought that Century 21 Kepchar was the agent of and part of the national Century 21 Real Estate Company. Prior to entering into the listing agreement, I saw Century 21 advertising on television, in newspapers, and on yard signs.

Forster also testifies to the effect that he never saw any printed material indicating that each Century 21 office is "independently owned and operated." Century 21 asserts in its reply that this testimony creates no factual issue as to the existence of apparent agency because Forster saw Kepchar's stationery and that stationery bore the "independently owned and operated" legend.

The problem with Century 21's efforts to dismiss Forster's affidavit is threefold. First, Century 21 relies on Forster's deposition for its assertions that he saw Kepchar's stationery, but his testimony is not that definite. Forster responded "yes" to the question "[do] you **think** that you received a letter on Century 21 Kepchar Realtors letterhead [containing the "independently owned and operated" caveat] ..." (emphasis added). Forster then elaborated:

> I believe that I may have.... I may have seen that on a check. I may have seen that on a statement....
>
> Q: ... or on the stationery, is that correct?
>
> A: It's possible, yes.

Forster dep. at p. 123.

Second, even if Forster did see the stationery, he may not have noticed the legend. Third, even if he saw the legend, that fact alone would not make his purported reliance on Century 21's national advertising unreasonable as a matter of law. *Cf. McDonald,*

331 N.W.2d at 605–06. Because neither party has, at this point, provided the details of Century 21's national advertising—evidence of the manifestations on which Forster may have relied—his affidavit suffices to create an issue of fact requiring trial. Thus, Century 21's motion for summary judgment must be denied.

This does not mean Century 21's motion was a waste of time. One of the functions of a summary judgment motion is to pare down the issues for trial. *See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1470 (4th Cir.1991) ("Dispositive motions serve judicial economy by encouraging parties to winnow out extraneous issues") (quoting district court order). The court therefore addresses Century 21's arguments regarding FOB's remaining legal theories.

### b. Actual Agency/Franchisor–Franchisee Liability

■ Century 21 contends that under its franchise agreement with Kepchar, Kepchar functioned as an independent contractor; thus, Century 21 is entitled to summary judgment on any issue of actual agency raised by FOB. In response, FOB contends that there is sufficient evidence of control exercised by Century 21 over Kepchar to make agency an issue for the jury to decide. Moreover, FOB contends that Indiana does not require that an agency relationship exist in order to hold a franchisor liable for the acts of its franchisee.

"Franchisor liability" is a fairly undeveloped area of law in Indiana. The two Indiana cases that have addressed the issue recognize that neither agency nor employer-independent contractor principles transfer perfectly to the franchisor-franchisee relationship. *Whitten v. Kentucky Fried Chicken Corp.,* 570 N.E.2d 1353, 1359 (Ind.Ct.App. 1991) (Sharpnack, J., concurring); *Clem v. Steveco, Inc.,* 450 N.E.2d 550, 555 (Ind.Ct. App.1983). Both cases conclude that liability hinges on whether the franchisor "controls"

the franchisee and does so negligently. As stated in *Whitten:*

> Thus, in franchisor-franchisee cases it is the task of the trier of fact to determine to what extent the franchisor is able to control the operations of the franchisee. The amount of control "must consist of something more than a general right to make suggestions or recommendations or to order the work stopped or resumed."

570 N.E.2d at 1356 (citation omitted); *Clem,* 450 N.E.2d at 555.

Not too different, the question whether one party acts as another's agent distilled to its essence is whether the principal has a right to control the agent: "A principal who controls or has the right to control the physical conduct of his agent in the performance of a service is a master, upon whom liability for the torts of the agent may be imposed." *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d 1074, 1077 (Ind.Ct.App.1992). *Detrick* sets out seven factors to be used to determine whether "the employer has the right to control the alleged employee." *Id.* These factors evince a greater degree of control in an agency situation, however, than that necessary to hold a franchisor liable under *Clem* and *Whitten.* Thus, for the purposes of the present discussion, if FOB's evidence of Century 21's control of Kepchar is insufficient to raise a question of fact as to franchisor-franchisee liability, that evidence necessarily fails to raise an issue of fact as to liability under an agency theory.

■ As explained in *Whitten,* in order for a franchisor to be held liable for a franchisee's act, there must be evidence that the franchisor had some degree of control (whether or not actually exercised) over that activity.[4] For example, in *Whitten* the plaintiff, an employee of a Kentucky Fried Chicken ("KFC") restaurant franchise, was injured while cleaning a pressurized chicken-frying machine. 570 N.E.2d at 1354. Although several clauses of the franchise agreement required the franchisee to use equipment

---

4. This is not a surprising requirement. Even in cases involving actual agency, the principal's right to control his or her agent does not lead to liability unless the agent is acting "within the scope" of his or her agency. This depends on

the principal's "right to direct and control the conduct of the alleged servant at the time the negligent act occurred." *Gibbs v. Miller,* 152 Ind.App. 326, 283 N.E.2d 592, 594–95 (1972).

approved by KFC, the fryer had been purchased prior to the time KFC had approved any particular fryer. 570 N.E.2d at 1354. Thus, KFC argued that under the franchise agreement it had no control over the franchisee's selection and use of the fryer. The trial court agreed and granted KFC summary judgment.

The Indiana Court of Appeals reversed. It pointed to provisions in the franchise agreement providing that KFC could require franchisees to modify existing fryers to meet the standards of approved models and that franchisees were required to use KFC-approved equipment if available. 570 N.E.2d at 1357. Observing that KFC could have required "strict compliance" with the franchise agreement, the court "found that there are material issues of fact precluding summary judgment...." 570 N.E.2d at 1357.

In the present case, the conduct alleged to have caused harm is the negligent handling of the details of the sale of Foddy's restaurant by Kepchar's sales associate, Thomas Crumpton. According to FOB, Crumpton failed to properly "pre-qualify" the buyer, presented a written offer that contained the wrong terms, and made several misrepresentations regarding the buyer's willingness, and ability, to close.

It is undisputed that the franchise agreement in the present case contains the following provision at ¶ 14(B):

> Neither Century 21 Regional nor Century 21 International shall regulate the hiring or firing of Franchisee's salespeople, the parties from whom Franchisee may accept listings or for whom Franchisee may sell property, the commission rates charged by Franchisee, the commissions splits between Franchisee and Franchisee's salespeople, the details of the work performed by Franchisee or its sales associates, the manner in which Franchisee obtains listings or sells property, the working conditions of Franchisee's salespeople, or Franchisee's contracts with customers, except to the extent necessary to protect the CENTURY 21 marks, trade names and goodwill associated therewith. The conduct of Franchisee's business shall be determined by its own judgment and discretion, subject only to the provisions of this Franchisee Agreement and the P & P [policy and procedures] Manual as it shall be adopted or revised from time to time.

It is also undisputed (despite Century 21's protestations that the word "control" is inapplicable[5]) that Century 21, through the franchise agreement, did control various aspects of Kepchar's business operations.

Among other items, Century 21 could prohibit Kepchar from having more than one office; dictate the physical appearance of the office (require remodeling, cleaning, etc.); dictate office hours; dictate the name Kepchar could do business under; regulate Kepchar's signage and use of the Century 21 name; require Kepchar to purchase supplies from an approved supplier; require Kepchar to contribute to an advertising fund; and require Kepchar to make detailed business reports to Century 21. Century 21 also offered various manuals, courses and seminars regarding the "Century 21 System" which Kepchar could, at its own discretion (other than an initial course every franchisee must attend), utilize to train its salespeople.

FOB argues that this control of Kepchar makes Century 21 liable for Kepchar's conduct. All of this is a red herring, however, like arguing that because McDonald's requires franchisees to erect golden arches out front, it should be held liable if a customer is

---

5. Much of Century 21's argument is based on the deposition testimony of Stephen Becker, regional director and vice-president of Century 21 Great Lakes, as to his interpretation of the franchise agreement. For example, the franchise agreement provides that as a "continuing obligation[ ] throughout the term of this Agreement: (i) Franchisee shall make reasonable alterations, modifications or upgrades to the office space ... as may be recommended by CENTURY 21 regional." ¶ 11(A)(i). Regarding this paragraph, Becker testified that once an office is approved, Cen-

tury 21 has "no right to make them [the franchisee] do anything to it" unless it deteriorates to the point where it "bears no semblance of what I approved." Becker Dep. at p. 100. From this testimony Century 21 argues that FOB has no evidence "to show that defendants **actually controlled** the appearance of the Kepchar office." Reply Brief at p. 20 (emphasis added). This argument misses the point. It is the right to control, not actual exercise of that right, that is critical. *Whitten*, 570 N.E.2d at 1357; *Gibbs*, 283 N.E.2d at 595.

sickened by improperly cooked meat. The relevant inquiry is whether Century 21 controlled Kepchar's business practices for selling property, and therefore should be held responsible for Crumpton's acts or omissions. *Cf. Salisbury v. Chapman Realty,* 124 Ill. App.3d 1057, 80 Ill.Dec. 336, 465 N.E.2d 127 (1984) (no franchisor liability even though franchise agreement created "considerable" control over franchisee's business: franchisee "maintained its individual identity and supervised its own operations subject to general standards."); *Little v. Howard Johnson,* 183 Mich.App. 675, 455 N.W.2d 390 (1990) (despite control of architecture and requirement to maintain clean facility, no franchisor liability for slip and fall because no control of day-to-day operations).

FOB has shown the court no evidence to suggest that Kepchar and Century 21 did not conduct their relationship in accordance with ¶ 14(B) of the franchise agreement, as quoted above. In other words, Kepchar ran the details of its day-to-day operations selling property with a free hand. Thus, the facts regarding Century 21's control over the conduct relevant in this case, Kepchar's business operations with respect to the sale of real estate, are not in dispute. This means that no issue regarding Century 21's control of Kepchar must be submitted to a jury for resolution, and Century 21 is entitled to summary judgment on FOB's actual agency and franchisor-franchisee liability theories.

## II. LIABILITY THEORIES BASED ON CENTURY 21's NEGLIGENT CONDUCT

Century 21 contends that FOB has adduced no evidence that Century 21 was negligently approved Kepchar to become a franchisee, or negligently supervised or failed to supervise Kepchar or Crumpton; instead, the undisputed evidence shows that Century 21 did not supervise Kepchar or Crumpton and under the franchise agreement it had no duty to do so.

### a. Negligent Grant of Franchise to Kepchar

FOB has made no response to Century 21's argument that the record is devoid of any evidence that it was negligent in approving Kepchar as a franchisee. Thus, the court can only conclude that FOB has no such evidence, and since a party cannot oppose a motion for summary judgment by resting on its pleadings, Century 21 is entitled to summary judgment on this theory of liability.

### b. Negligent Supervision of Kepchar

■ In response to Century 21's assertion that there is no evidence of negligent supervision, FOB makes two arguments. First, that Century 21 was allowing Kepchar to engage in business other than selling real estate, violating the franchise agreement. Second, that Century 21 allowed Kepchar to print advertisements that did not state "each office independently owned and operated," violating the franchise agreement.

It is undisputed that the franchise agreement precluded Kepchar from using the Century 21 name for anything other than conducting real estate business without Century 21's approval and allowed Century 21 to impose various requirements should such approval be granted. Kepchar's attempted sale of the Foddy's restaurant included liquor licenses, kitchen equipment, inventory of beer, wine and food, and other personal, non-real property. According to FOB, Century 21 negligently supervised Kepchar by allowing Kepchar to use the Century 21 name to engage in business other than real estate, i.e., the sale of this personal property along with the restaurant.

As explained in *Business Brokerage Centre v. Dixon,* 874 S.W.2d 1 (Tenn.1994), the issue whether the sale of a business including personal property is or is not a real estate transaction has arisen in those cases seeking to determine whether the broker involved may collect a commission if not licensed as a real estate broker. *Business Brokerage Centre* found that three views exist. Some jurisdictions require a real estate license in all cases, even if the real estate component is de minimis, viewing the transaction as a whole as a real estate transaction; some jurisdictions do not require a license if the real estate is "merely incidental" to the transaction; and one jurisdiction (New Jersey) allows the broker to recover a commis-

sion on the "non-real" portion of the transaction as long as it can be assigned a reasonable valuation, finding that the licensing statute was not meant to protect sophisticated parties who deal with those brokering the sale of an ongoing business. *Business Brokerage Centre,* 874 S.W.2d at 3–4 (collecting cases).

The salient point to be drawn from *Business Brokerage Centre* is that none of the jurisdictions (except, arguably, New Jersey) consider the sale of a business's real and personal property in a single transaction as something other than a real estate transaction. Moreover, the only relevant authority appears to place Indiana in the first category, as one of the jurisdictions that considers the transaction as a whole to be a real estate transaction.

In *Folsom v. Callen,* 126 Ind.App. 201, 131 N.E.2d 328, 329 (1956), Folsom, not a licensed real estate broker, sued to recover a fee he alleged to be due him for procuring a buyer for the Hotel Francis. Folsom contended that he did not need a license because he sold an ongoing business enterprise only, with its associated goodwill and personal property. The appellate court concluded that Folsom had assisted in the sale of the right to a nineteen-year lease on the building, along with fixtures, furniture, equipment, other personal property and goodwill, requiring him to be licensed as a real estate broker, and denied him the fee. 131 N.E.2d at 330.

Although *Folsom* was decided under a prior version of the licensing statute, now found at Ind.Code § 25–34.1–1–1 *et seq.,* the relevant statutory language differs inconsequentially.[6] *Folsom* leads the court to conclude that under Indiana law, Kepchar was not engaging in business other than selling real estate when it listed Foddy's restaurant, along with associated personal property, for sale. FOB's evidence of this transaction does *not* raise an issue of fact indicating negligent supervision by Century 21.

FOB's second argument is that Century 21 negligently allowed Kepchar to run advertisements that did not mention Kepchar's independent status as required by the franchise agreement. It is undisputed that Kepchar ran such ads. Century 21 responds that it was not negligent because it lacks sufficient staff to monitor its franchisees' advertising, and never saw the ads in question.

Assuming that Century 21 owes the public a duty to be sure that its franchisees print proper ads, this argument strikes the court as more an admission of, rather than a defense to, a claim of negligence. But that is irrelevant, because it is impossible to imagine how this presumed negligence caused FOB any harm. (Imagination is required because the parties have not addressed the causation issue.)

The court can only divine FOB's argument to be that, had Kepchar's ads warned that Kepchar was independently owned, FOB would not have done business with Kepchar, and so not have been harmed. However, there is no evidence of this fact. Forster's affidavit states that he thought he was entrusting his business to the national Century 21 company, but does not state he would have refused to do business with Kepchar had he understood otherwise.

More to the point, even if that were the case, making the ads a cause (even a "but-for" cause) of FOB's alleged injuries, that does not make the ads (more precisely, Century 21's lack of supervision of the ads) the proximate, or legal, cause of FOB's harm. If, while at Kepchar's office, lightning struck Forster, it would be clear that Century 21's negligence was not the proximate cause of the harm, despite the fact that Forster would not have been in the physical location where lighting struck were it not for the offending advertising.

Like the lightning, Crumpton's alleged negligence is an intervening cause too remote from Century 21's conduct for that conduct

---

**6.** But cf. *First Federal Savings Bank of Indiana v. Galvin,* 616 N.E.2d 1048 (Ind.Ct.App.1993). *Galvin* concluded that the statute has been amended to change the result in *Folsom,* by eliminating "procuring purchasers" from the definition of broker so that one who acts as a mere "finder" of buyers need not be a licensed real estate broker. *Galvin,* 616 N.E.2d at 1053–53. *Galvin* does not alter the present analysis because Crumpton acted as a traditional broker, not merely a finder.

to be a proximate cause of FOB's alleged harm. "It is well settled that where a defendant's negligence merely creates a condition by which the subsequent injury producing acts of another are made possible, the existence of the first condition cannot be the proximate cause of the injuries but is the remote cause." *Estate of Cummings v. PPG Industries, Inc.*, 651 N.E.2d 305, 311 (Ind.Ct. App.1995). For this reason, the court concludes that FOB's evidence of Century 21's negligent supervision of Kepchar's advertising is insufficient to create a triable issue.

As explained in this order, Century 21's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** FOB may proceed to trial against the Century 21 defendants on its apparent agency theory only.

**SO ORDERED.**